Luz Selenia GONZALES, Plaintiff,

v.

PROGRESSIVE TOOL & DIE, CO., Johnson Liquidating Co., Inc., Vimm Corporation, Arvid S. Johnson, Jr. and Vimm Liquidating Corporation, Defendants.

No. 77 C 892.

United States District Court, E. D. New York.

Jan. 2, 1979.

14. See ¶ 4 of their motion to dismiss.

15. See ¶ 4 of their motion to dismiss.

118

Katz, Shandell, Katz & Erasmous, New York City (Emily Diamond, New York City, of counsel), for plaintiff.

Bowditch & Dewey, Worcester, Mass. (George B. Sanders, Jr., Worcester, Mass., of counsel), for defendant Arvid S. Johnson, Jr.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

In this diversity action the court's earlier memorandum and order of August 9, 1978, 455 F.Supp. 363 (E.D.N.Y.1978), dismissed on motion plaintiff's claims as to two corpo-rate defendants but declined, on the record presented, to grant defendant Arvid S. Johnson, Jr. ("Johnson") summary judgment. Familiarity with the previous memorandum and order is assumed. Johnson has again moved for summary judgment dismissing the complaint as to him.

The facts may be briefly recapitulated. Plaintiff, a New York resident, sued for asserted injuries sustained on September 19, 1974 while she was operating a molding machine manufactured by Progressive Tool and Die Co. ("Progressive"), a Massachu-setts corporation. Progressive, organized in 1928, changed its name to Johnson Liqui-dating Co., Inc. in 1967 and sold most of its tangible assets to other corporations. On February 3, 1971, by order of the Supreme Judicial Court of Massachusetts, the corpo-ration was liquidated and its remaining as-sets distributed to its shareholders. John-son received a liquidating dividend consist-ing of notes payable to Progressive with a face amount of $71,608.08.

Plaintiff sought to hold Johnson liable on several theories: (1) that his relationship with Progressive justified "piercing the cor-porate veil" to reach his assets, (2) that he was a "successor" to Progressive's business, and (3) that as a stockholder he received a distribution of Progressive's assets on disso-lution. The court rejected the first two and declined to rule on the third, the so-called "trust fund" theory of shareholder liability.

Under Massachusetts law a dissolved corporation continues in existence for three years to prosecute or defend suits, settle its affairs, dispose of its property, and make distribution to stockholders "of any assets remaining after the payment of its debts and obligations." Mass.Gen.Laws Ann., Ch. 156B § 102. Thus a dissolved corporation cannot be sued after the expiry of the three year period. Since plaintiff's injury did not occur until after that period she could not sue the corporation and sought to hold Johnson personally liable.

In declining to decide the difficult question of whether Massachusetts law would permit suit against Johnson to the

extent he had received corporate assets on liquidation this court reasoned that, even assuming a Massachusetts court would entertain such a suit, plaintiff was at least required to show that the corporations which acquired Progressive's tangible assets did not assume Progressive's liabilities by agreement or operation of law. It would be unfair to allow suit against Johnson if the price paid Progressive by the purchasers was diminished by the unliquidated value of contingent claims such as that asserted by plaintiff. The court therefore denied the motion pending a fuller development of the record.

It now appears that there is no proof that the successors assumed contingent products liability claims against Progressive. Indeed, the parties to the transfers appear not to have considered the matter. This is hardly surprising since the Massachusetts courts have only recently held that a claim for personal injuries inflicted by defective products accrues at the time of injury. *Cannon v. Sears, Roebuck & Co.,* 374 N.E.2d 582 (Sup.Jud.Ct.Mass.1978). This court must therefore face the question of whether, under Massachusetts law, plaintiff may pursue the assets distributed by Progressive to Johnson on the theory that he held them in trust for claimants such as plaintiff.

There is no need to repeat in detail the conflicting considerations set forth in the court's prior memorandum. As far as judicial authority is concerned, to accord plaintiff a claim against Johnson's distribution of the corporate assets would go farther than any case of which the court is aware. *Bowen v. Fairfield,* 260 Mass. 38, 157 N.E. 39 (Suffolk 1927), cited by defendant, was, as this court previously noted, decided on a procedural point. Moreover, by its reference to *Whiting v. Malden & Melrose Railroad,* 202 Mass. 298, 304, 88 N.E. 907 (1909), the opinion in the *Bowen* case evidently meant merely to restate the familiar principle that the acquisition by a person or corporation of the assets of another corporation is not in itself sufficient to charge the new holder with the debts of the old.

The reported cases imposing liability on assets distributed in liquidation to a stockholder on the theory he holds them in trust for claimants against the corporation have all concerned stockholders who had, or should have had, notice of the claims at the time of the distribution. *See* Wallach, *Products Liability: A Remedy in Search of a Defendant—The Effect of a Sale of Assets and Subsequent Dissolution on Product Dissatisfaction Claims,* 41 Mo.L.Rev. 321, 328–29, 331 (1976). The case of *Wood v. Dummer,* 3 Mason 308, 30 Fed.Cas.No.17,-944, p. 435 (Cir.Ct.D.Maine 1824), decided by Justice Story and cited by plaintiff, does not go beyond that. There a distribution by a bank to its shareholders left it "in deep insolvency" and was made "at a time when it was perfectly well known, or ought to have been known, that a very large number of bank notes . . . were due and outstanding against the bank", 30 Fed.Cas. at pp. 436, 439. *See also Vose v. Grant,* 15 Mass. 505 (1819), to the same effect.

To permit one whose claim was in existence at the time of dissolution to pursue the assets distributed is far different from allowing an action against those assets by a person whose claim for injuries had not accrued when the distribution was made. In the one case the distributee has, or should have, notice and can effectively make arrangements for payment of the claim. In the other, unless the distributee has reason to believe that the corporate product is likely to cause injury in the future, he cannot anticipate the claim. As far as this record shows, Johnson could hardly have been expected to foresee plaintiff's claim and still less to have anticipated that the Massachusetts courts would allow it, since, as we have seen, only in the past year have the courts of that state ruled that a products liability claim accrues when the injury is sustained.

There is, of course, an interest in certainty and finality in corporate dissolution, and that interest must be weighed against a policy of compensating those who have been injured by products long after their manufacture.

The language of the Massachusetts legislation by no means gives an unequivocal answer to the question. Defendant points to § 45 of Mass.Gen.Laws Ann., C. 156B, which limits the liability of stockholder distributees to "an amount equal to the debts and contracts of the corporation existing at the time of such distribution." The section applies only where the corporation is rendered insolvent by the distribution and is thereafter adjudicated bankrupt, but the argument is that in referring only to "existing" debts and contracts the Massachusetts legislature showed that its interest was in protecting the distributees against unripened claims even though they were to arise from earlier corporate fault.

A similar argument may be made from section 103 of the same chapter, which provides that a corporation may, within the three year period of section 102 (referred to above p. 2), distribute its assets to stockholders as liquidating dividends if a court finds the interests of "creditors, if any, . . . are reasonably protected." It would be unusual to think of someone not yet injured by a product as a "creditor" of the product's manufacturer.

However, these statutory provisions cannot be said to show that the legislature focused on such a case as is presented here and decided that plaintiff should have no claim. It is true that the language can be read as presupposing that the only claimants entitled to pursue assets in the hands of a distributee are those who can be called existing creditors. But the wording can also be read to show that the legislature did not consider the matter at all.

The inquiry thus must be as to what the legislature would have done had it considered the issue against the background of the common law. This inevitably entails the weighing of conflicting policies, that of corporate repose and certainty and that of compensating the injured.

A court, particularly a federal court sitting outside the state whose laws govern, is ill equipped to strike the balance. Indeed, the matter seems to involve too many imponderables to be susceptible of any satisfactory judicial solution. The lengthy statute of limitations inherent in holdings that the claim accrues on injury may render it difficult for a seller of tangible assets to estimate the potential liability, to obtain insurance, *see* 16 B.C.Ind. & Com.L.Rev. 676, 687 (1975), or to keep it in force. *See* 27 Me.L.Rev. 305, 317 (1975).

A legislature, far more than a court, has the capability of determining the extent of the problem and of assessing accurately the overall effect of the choice of one policy over another.

These considerations persuade this court that it should not do what no Massachusetts court has done but should leave to the Massachusetts legislature the recognition of a claim such as that asserted by plaintiff against Johnson. The motion for summary judgment is granted, and the complaint is dismissed as to Johnson. So ordered.