[No. S003256. Aug. 25, 1988.]

PACIFIC SCENE, INC., et al., Cross-complainants and Appellants,
v.
PEÑASQUITOS, INC., et al., Cross-defendants and Respondents.

COUNSEL

Bacalski, Holdway & Prindle, Patrick L. Prindle, A. Daniel Bacalski, Randall D. Gustafson and Bacalski & Lincoln for Cross-complainants and Appellants.

Gary L. Wollberg and Jenkins & Perry as Amici Curiae on behalf of Cross-complainants and Appellants.

Wright & L'Estrange, Robert C. Wright, Christopher D. McIntire, Sternberg, Eggers, Kidder & Fox and Lawrence T. Dougherty for Cross-defendants and Respondents.

OPINION

**MOSK, J.**—We are called upon in this case to determine whether an action under the equitable "trust fund" theory can be maintained against the former shareholders of a dissolved corporation, to the extent of their distribution of corporate assets, when a defective product manufactured by the corporation causes injury after dissolution. We conclude that the Legislature has barred such an action.

Pacific Scene, Inc. (hereafter Pacific) is a corporation producing tract homes. Prior to its dissolution in 1979, Peñasquitos, Inc., was a California corporation in the business of developing and finishing residential lots suitable for tract home construction. Pacific purchased a number of lots from Peñasquitos in 1974, and in 1975 sold tract homes constructed thereon. In 1982 nine homeowners discovered damage caused by the subsidence of lots sold by Peñasquitos. They sued Pacific on various theories, including strict products liability, negligence, and breach of warranty.

Pacific cross-claimed against Peñasquitos, which demurred. The court sustained the demurrer without leave to amend and dismissed the cross-complaint, concluding that Corporations Code section 2011 barred suits against dissolved corporations on claims arising after dissolution. Pacific appealed. The Court of Appeal agreed that the corporation itself could not be sued, but reversed with directions to grant Pacific leave to cross-complain against the former shareholders of Peñasquitos under the equitable "trust fund" theory. We granted the shareholders' petition for review.

As will appear, we conclude that the Legislature has generally occupied the field with respect to the remedies available against the former sharehold-

ers of dissolved corporations, thus preempting antecedent common law causes of action, and that the trust fund theory furthermore conflicts with specific provisions of the Corporations Code. Pacific's postdissolution claim under the trust fund theory therefore is barred.

## Discussion

Dissolution of a corporation under the common law "terminate[d] its existence as a legal entity, and render[ed] it incapable of suing or being sued as a corporate body or in its corporate name." (*Crossman* v. *Vivienda Water Co.* (1907) 150 Cal. 575, 580 [89 P. 335].) The trust fund theory was developed to ameliorate the harsh result of this common law rule, which allowed corporations to shield their assets from the reach of creditors through distribution to shareholders pursuant to dissolution. (Wallach, *Products Liability: A Remedy in Search of a Defendant—The Effect of a Sale of Assets and Subsequent Dissolution on Product Dissatisfaction Claims* (1976) 41 Mo.L.Rev. 321, 328 (hereafter Wallach).) The doctrine traces its roots to Justice Story's opinion in *Mumma* v. *The Potomac Co.* (1834) 33 U.S. (8 Pet.) 281 [8 L.Ed. 945], in which the high court held that the assets of a dissolved corporation were subject to equitable distribution among creditors. (*Id.* at pp. 286-287; see Note, *Continuing Corporate Existence for Post-Dissolution Claims: The Defective Products Dilemma* (1982) 13 Pacific L.J. 1227, 1233, fn. 42.)

Under the equitable theory, "a creditor of the dissolved corporation may follow [the distributed assets] as in the nature of a trust fund into the hands of stockholders. The creditors have the right to subject such assets to their debts and for that purpose the stockholders hold them as though they were trustees. In other words, the assets of the dissolved corporation are a trust fund against which the corporate creditors have a claim superior to that of the stockholders. A stockholder who receives only a portion of the assets is liable to respond only for that portion. Where the assets coming into the hands of a stockholder suffer a change in value, the creditor must take the trust fund as he finds it, securing the advantage of any increase and suffering any decrease, unless the stockholder is responsible for the decrease. Where the trust property has been used by the stockholder for his own purpose, or disposed of by him, he may be held personally liable for the full value thereof." (*Koch* v. *United States* (10th Cir. 1943) 138 F.2d 850, 852.) The existence of the trust fund doctrine was first acknowledged by this court more than 80 years ago. (*Crossman* v. *Vivienda Water Co., supra,* 150 Cal. at p. 579; see also *Dominguez Land Corp.* v. *Daugherty* (1925) 196 Cal. 468, 480-481 [238 P. 703], and *Trubowitch* v. *Riverbank Canning Co.* (1947) 30 Cal.2d 335, 345 [182 P.2d 182].)

## I.

█ The shareholders first contend that the Legislature has completely occupied the field concerning the rights and remedies attending corporate dissolution, thus preempting antecedent common law remedies such as the trust fund theory. █ We observed in *I. E. Associates* v. *Safeco Title Insurance Co.* (1985) 39 Cal.3d 281 [216 Cal.Rptr. 438, 702 P.2d 596], that " 'general and comprehensive legislation, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter.' " (*Id.* at p. 285.) █ The shareholders maintain that statutory provisions now comprehensively define the remedies available with respect to assets distributed pursuant to a corporate dissolution, and therefore that the trust fund theory has been supplanted in its entirety.

Sections 1800 to 2011 of the Corporations Code, enacted as part of a comprehensive statutory revision in 1977, comprise a broad and detailed scheme regulating virtually every aspect of corporate dissolution. (See Stats. 1975, ch. 682, § 7.)[1] Included therein are two sections specifically governing claims asserted by creditors against former shareholders for the recovery of distributed corporate assets. Section 2009 provides: "(a) Whenever in the process of winding up a corporation any distribution of assets has been made . . . without prior payment or adequate provision for payment of any of the debts and liabilities of the corporation, any amount so improperly distributed to any shareholder may be recovered by the corporation. . . . [¶] (b) Suit may be brought in the name of the corporation to enforce the liability under subdivision (a) against any or all shareholders receiving the distribution by any one or more creditors of the corporation, whether or not they have reduced their claims to judgment." Section 2011, subdivision (a) (hereafter section 2011(a)), provides: "In all cases where a corporation has been dissolved, the shareholders may be sued in the corporate name of such corporation upon any cause of action against the corporation arising prior to its dissolution."

Section 2009 traces its origins to former section 402 of the Civil Code, enacted as part of the 1931 General Corporation Law. The predecessor statute provided that "After final distribution of the corporate assets by the directors, any creditor, whose claim has not been paid in full may sue the corporation, its directors, and any or all of its shareholders in one proceeding and compel the corporation either to pay any amount due or to set aside the distribution and recover from the shareholders ratably . . . so far as

---

[1] Unless otherwise noted, all further statutory references are to the Corporations Code.

needed to satisfy the liabilities of the corporation and the costs of the proceeding." (Stats. 1931, ch. 862, p. 1825.) However, a 1933 revision of Civil Code section 402 deleted the direct statutory remedy afforded creditors in the initial version of the provision. As amended, the section read: "Whenever in the process of winding up a corporation any distribution of assets has been made . . . without prior payment or adequate provision for payment of any of the debts and liabilities of the corporation, any amount so improperly distributed . . . may be recovered by the corporation or by its receiver, liquidator or trustee in bankruptcy." (Stats. 1933, ch. 533, p. 1408.) In 1947 the statute was recodified without substantial modification as section 5012. (Stats. 1947, ch. 1038, p. 2396.) Because section 5012 exclusively authorized dissolving corporations to bring actions against shareholders for the recovery of improperly distributed assets, the court in *Zinn* v. *Bright* (1970) 9 Cal.App.3d 188 [87 Cal.Rptr. 736], held that a creditor's sole cause of action for the recovery of such assets was pursuant to the equitable "trust fund" theory. (*Id.* at pp. 192-193.)

As enacted in 1977, section 2009 superseded section 5012 and restored to creditors a direct remedy against the former shareholders of dissolved corporations. (§ 2009, subd. (b).) At the same time the Legislature enacted section 2011(a), authorizing suits against former shareholders in the corporate name on claims arising prior to dissolution. (Cf. § 3305.2 added by Stats. 1969, ch. 1610, § 26, p. 3374.) Sections 2009 and 2011(a) thus created causes of action encompassing precisely the kinds of claims previously asserted under the trust fund theory. Wallach explains their potential effect on the availability of equitable relief: "Equitable remedies exist to supply relief where no legal remedy exists, or where the existing legal remedy is inadequate under the circumstances of a particular case. The 'trust fund' theory evolved to fill a void in creditor's remedies created by the common law abatement rule. Now that a statutory remedy exists, it may be argued that an adequate legal remedy is available which deprives the court of equitable jurisdiction." (Wallach, *supra,* at p. 332, fn. omitted.)

In this regard, two prominent commentators on California corporate law have concluded that the enactment of section 2009 effectively overruled the holding in *Zinn, supra,* 9 Cal.App.3d 188, and that the "equitable cause of action does not survive adoption of the statute." (1A Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1988) ch. 15, § 317.04, p. 15-40; 2 Marsh's Cal. Corporation Law (2d ed. 1981) § 20.32, p. 650.)

The only appellate court to consider the preemptive effect of California's current statutory scheme similarly concluded that it has wholly displaced the trust fund theory with respect to claims for the recovery of improperly distributed assets. In *United States* v. *Oil Resources, Inc.* (9th Cir. 1987) 817

F.2d 1429, the Ninth Circuit considered a claim by the Internal Revenue Service against the former shareholders of a dissolved corporation for the satisfaction of tax liabilities. The district court held the shareholders liable under the trust fund doctrine as enunciated in *Trubowitch* v. *Riverbank Canning Co., supra,* 30 Cal.2d 335, 345. The Ninth Circuit reversed, reasoning that the statutory remedy provided in section 2009 superseded the common law cause of action and that "We must therefore apply the statutory scheme in resolving this dispute." (817 F.2d at p. 1433.)

Courts construing Texas and Illinois law have likewise held that the statutory remedies now available against former shareholders "completely regulate and control both the substantive and procedural rights of the parties" to the exclusion of antecedent equitable remedies, thus precluding reliance on the trust fund theory for the assertion of postdissolution claims. (*Reconstruction Finance Corporation* v. *Teter* (7th Cir. 1941) 117 F.2d 716, 727; see *Hunter* v. *Fort Worth Capital Corp.* (Tex. 1981) 620 S.W.2d 547, 551, fn. 6 [20 A.L.R.4th 399] (hereafter *Hunter*).) As the Texas Supreme Court concluded, "The effect of these [predecessor] statutes was to supplant the equitable trust fund theory by declaring a statutory equivalent." (*Hunter, supra,* at p. 550.)

In view of the detailed statutory remedies now encompassing virtually all claims previously asserted in equity against the former shareholders of dissolved corporations, we must similarly conclude that the Legislature has occupied the field and precluded resort to dormant common law doctrines for the provision of extra-statutory relief. This conclusion is especially compelling on the facts before us, insofar as the equitable relief sought by Pacific would require us to confront a variety of intractable policy questions intimately bound up with the provisions and objectives of the existing statutory scheme.[2] Once the Legislature has evinced an intent to comprehen-

---

[2] Reflecting on the procedural pitfalls of an equitable remedy for postdissolution claimants, the court in *In re Citadel Industries, Inc.* (Del.Ct.Ch. 1980) 423 A.2d 500, observed that "Once a corporation is dissolved, . . . all known debts paid, all remaining assets distributed to shareholders, books and records destroyed, and officers and directors gone on to other endeavors, how can any court be expected to get everyone reconvened and reorganized . . . ? How can a vast number of former shareholders be compelled to return any final distribution of assets . . . ? [T]hese factors, along with a myriad of others, would have to be considered . . . . In the case of a large, publicly-held corporation, the task would be enormous and the potential problems and considerations would be boundless." (*Id.* at p. 506.) With respect to the policy implications of the undertaking, the court in *Gonzales* v. *Progressive Tool & Die Co.* (E.D.N.Y. 1979) 463 F.Supp. 117, noted that the remedy would "inevitably entail[ ] the weighing of conflicting policies, that of corporate repose and certainty and that of compensating the injured. [¶] A court . . . is ill equipped to strike the balance. Indeed, the matter seems to involve too many imponderables to be susceptible of any satisfactory judicial solution. The lengthy statute of limitations inherent in holdings that the claim accrues on injury may render it difficult for a seller of tangible assets to estimate the potential liability, to obtain

sively define the contours of a particular field, however, such complex policy determinations must plainly remain beyond the reach of our equitable jurisdiction.

## II.

The shareholders maintain that even if the Legislature did not intend to completely occupy the field with respect to the rights and remedies attending corporate dissolution, the assertion of postdissolution claims under the trust fund theory nonetheless conflicts with the specific intent of section 2011(a).

Section 2011(a) provides: "In all cases where a corporation has been dissolved, the shareholders may be sued in the corporate name of such corporation upon any cause of action against the corporation arising *prior* to its dissolution. This section is procedural in nature and is not intended to determine liability." (Italics added.) The shareholders argue that this language, by negative implication, evinces an intent to preclude actions against former shareholders for injuries arising after corporate dissolution, and thus that any corresponding equitable action must be similarly barred. "While equitable relief is flexible and expanding, its power cannot be intruded in matters that are plain and fully covered by positive statute, nor will a court of equity lend its aid to accomplish by indirection what the law or its clearly defined policy forbids to be done directly." (*Marsh* v. *Edelstein* (1970) 9 Cal.App.3d 132, 140-141 [88 Cal.Rptr. 26].)

The Court of Appeal reasoned that although section 2011(a) plainly preempts the trust fund theory with respect to predissolution claims, the statute simply fails to address the postdissolution context and therefore need not be read to bar equitable relief for claims then arising. Courts and commentators considering this argument have been troubled by its implication that legislators uselessly created a redundant statutory remedy for a subclass of claims concurrently remediable in equity. As the court in *Hunter* observed with respect to a similar statute, "we must assume that when the legislature enacted [the statute] it knew to what extent the equitable doctrine already provided a remedy for pre-dissolution claims. With this in mind, no real purpose would be served by the enactment of [the statute], permitting suits against officers, directors, and shareholders of a dissolved corporation [for predissolution claims], unless the legislature intended for the statute to bar resort to the trust fund theory apart from the statute in

insurance, or to keep it in force. [¶] A legislature, far more than a court, has the capability of determining the extent of the problem and of assessing accurately the overall effect of the choice of one policy over another." (*Id.* at p. 120, citations omitted.)

order to enforce post-dissolution claims." (*Hunter, supra,* 620 S.W.2d at p. 551, citations omitted; *Wallach, supra,* at p. 331.)

In anticipation of this concern, the Court of Appeal struggled at length to invest its construction of section 2011(a) with some plausible legislative intent. The court ultimately concluded that the statute serves the purpose of expediting relief for predissolution claimants by providing them with a simple and direct legal remedy, while relegating postdissolution claimants to the more burdensome procedural requirements of equity. (See *Crossman* v. *Vivienda Water Co., supra,* 150 Cal. at p. 583; Wallach, *supra,* at pp. 331-332.) As the court asserted, "The fact that the Legislature has provided in section 2011(a) for a streamlined procedural mechanism applicable to pre-dissolution claims is not inconsistent with retention of the more cumbersome equitable 'trust fund' theory as to postdissolution causes of action." Notably, the court declined to speculate why the Legislature would wish to draw this odd procedural distinction if it indeed desired to allow postdissolution claims to proceed.

We find it difficult to believe that the Legislature would have labored to expressly limit the reach of section 2011(a) simply to bring forth this procedural mouse. In the unfortunate absence of legislative history to guide our construction of section 2011(a), logic suggests that language limiting its remedy to predissolution claims must reflect some larger purpose than contemplated by the court below. This is particularly true in light of the fact that the predecessor statute to section 2011(a) did not similarly exclude postdissolution claims: former section 3305.2 provided that "In *all* cases where a corporation has forfeited its charter or right to do business, or has dissolved, the trustees of the corporation and of its stockholders or members may be sued in the corporate name of such corporation." (Stats. 1969, ch. 1610, § 26, p. 3374, italics added.) Thus the Court of Appeal maintains that the Legislature, by amending the Corporations Code to expressly exclude postdissolution claims formerly within the reach of section 3305.2, simply intended to return postdissolution claimants to the archaic and relatively more burdensome remedy of equity. The analysis strains credulity.

The foregoing construction is even less credible in view of the general legislative objectives of certainty and finality undergirding the dissolution provisions of the Corporations Code. (See §§ 2009-2011; Note, *Continuing Corporate Existence for Post-Dissolution Claims: The Defective Products Dilemma, supra,* 13 Pacific L.J. at p. 1228; see also *Bishop* v. *Schield Bantam Company* (N.D.Iowa 1968) 293 F.Supp. 94, 96.) Although the finality interests of a dissolving corporation and those of its shareholders are not synonymous, insofar as postdissolution claims against shareholders "do[ ]

not prevent the final termination of an entity, as does the possibility of delayed claims against the dissolved corporation" (Wallach, *supra,* at p. 333), shareholders nonetheless possess an *important statutory interest in* the final and certain termination of their involvement with the affairs of a dissolving corporation. (See, e.g., §§ 1907, 2004, 2009, 2011; Note, *op. cit. supra,* 13 Pacific L.J. at p. 1228.) The Court of Appeal conceded, however, that its construction of section 2011(a) would subject shareholders to the possibility of "unending liability . . . ." As the court in *Blankenship* v. *Demmler Mfg. Co.* (1980) 89 Ill.App.3d 569 [411 N.E.2d 1153], concluded, this result is at odds with the very notion of dissolution: "We agree with defendant that extension of the trust fund theory to cover plaintiff's [post-dissolution] claim would mean that the corporation could never completely dissolve but would live on indefinitely through its shareholders. We do not believe that this result would be in accordance with the spirit of the laws governing the dissolution of corporations." (*Id.* at p. 1156.)

We are aware, of course, that other interests are reflected in the dissolution provisions of the Corporations Code, not the least of which is payment to corporate creditors. (See, e.g., §§ 1905, 2005, 2009-2011.) This interest stands in inherent conflict with the final and certain conclusion of a corporation's affairs, as the comment to section 14.07 of the 1985 Model Business Corporations Act explains: "[O]n the one hand, the application of a mechanical . . . limitation period to a claim for injury that occurs after the period has expired involves obvious injustice to the plaintiff. On the other hand, to permit these suits generally makes it impossible ever to complete the winding up of the corporation . . . ." (Model Bus. Corp. Act Ann. (1985) § 14.07, com. at p. 1501; see also *Gonzales* v. *Progressive Tool & Die Co., supra,* 463 F.Supp. at p. 119, and Henn & Alexander, *Effect of Corporate Dissolution on Products Liability Claims* (1971) 56 Cornell L.Rev. 865, 911 (hereafter Henn & Alexander).) The 1985 model act reconciles these conflicting interests by allowing the assertion of claims against former shareholders during a five-year period following corporate dissolution, but barring claims arising thereafter. (1985 Model Bus. Corp. Act Ann., *supra,* at § 14.07, p. 1499.) Here we are asked to infer that the Legislature has balanced the same interests entirely on the shoulders of shareholders, who assertedly are required to face such claims in perpetuity.

We recognize that the final sentence of section 2011(a), considered in isolation, could arguably support the analysis of the Court of Appeal. It reads: "This section is procedural in nature and is not intended to determine liability." The Court of Appeal concluded that the language manifests the Legislature's desire to avoid interference with substantive rights in their entirety, and thus that all potential applications of the trust fund theory have been left unimpaired. However, it is equally plausible that the

language is intended to reaffirm the limited principle that shareholders are not personally liable for a corporation's debts, as once they were in California. (See, e.g., former art. XII, § 3, Cal. Const. of 1879, repealed in 1930.) Under this construction, the sentence merely forestalls the misunderstanding that might result from the statutory authorization of suits against shareholders "in the corporate name," and is therefore irrelevant to the question whether section 2011(a) precludes postdissolution equitable remedies. Either interpretation is tenable absent evidence of legislative intent, of which there is none; the quoted language thus cannot advance our analysis.

We must choose, then, between a construction of section 2011(a) premised on a silent legislative intent to procedurally encumber postdissolution creditors in the unending assertion of their claims, or alternatively a construction precluding postdissolution claims in a manner consistent with the statutory objectives of certainty and finality. We accordingly determine that the statute bars the assertion of postdissolution claims in equity. (Accord, *Levin Metals Corp.* v. *Parr-Richmond Terminal Co.* (N.D.Cal. 1986) 631 F.Supp. 303, 304, affd. (9th Cir. 1987) 817 F.2d 1448, 1450.)

Courts in several other jurisdictions construing similar statutory provisions have reached the same result. A number of states have enacted statutes substantially identical to section 105 of the 1969 Model Business Corporations Act, which allows actions against dissolved corporations and their officers, directors, and shareholders on predissolution claims brought within two years of corporate dissolution. (Model Bus. Corp. Act Ann. (1969) § 105; see, e.g., Tex. Bus. Corp. Act, art. 7.12; Ill. Ann. Stat., ch. 32, § 12.80; Iowa Code Ann., § 496A.102.)[3] Courts considering such statutes in Texas, Illinois, and Iowa have each concluded that the exclusive statutory authorization of predissolution claims bars the assertion of claims arising thereafter. (*Hunter, supra,* 620 S.W.2d at p. 551 [trust fund action barred]; *Suarez* v. *Sherman Gin Co.* (Tex.Civ.App. 1985) 697 S.W.2d 17, 19-20 (writ ref. n.r.e.) [same]; *Reconstruction Finance Corp.* v. *Teeter, supra,* 117 F.2d at p. 727 [same, under predecessor statute in Illinois]; *Blankenship* v. *Demmler Manufacturing Co., supra,* 411 N.E.2d at p. 1157 [same]; *Bishop* v. *Schield Bantam Co., supra,* 293 F.Supp. at p. 95 [construing Iowa law]; see also *Bazan* v. *Kux Machine Co.* (1971) 52 Wis.2d 325 [190 N.W.2d 521,

---

[3]Section 105 of the 1969 Model Business Corporations Act provides: "The dissolution of a corporation . . . shall not take away or impair any remedy available to or against such corporation, its officers, directors, or shareholders, for any right or claim existing, or any liability incurred, *prior to such dissolution* if action or other proceeding thereon is commenced within two years after the date of such dissolution." (Italics added.) Significantly, the drafters of the model act itself recently concluded that the emphasized language failed to adequately provide for the assertion of postdissolution claims, and have entirely rewritten the provision to authorize the assertion of such claims during the first five years following dissolution. (See 1985 Model Bus. Corp. Act Ann., *supra,* at § 14.07.)

525]; cf. *Chadwick* v. *Air Reduction Company* (N.D.Ohio 1965) 239 F.Supp. 247, 251 ["It is . . . quite clear that under the Model Business Corporation Act, and those state statutes patterned after it, a corporation may be sued for pre-dissolution torts only. [¶] The Ohio statute . . . does not conform to the language of the Model Act."].) Our analysis of section 2011(a) is thus consistent with the substantial body of precedent construing the parallel statutory provisions of our sister states.[4]

*Conclusion*

For the reasons stated, we conclude that the Legislature has precluded the assertion of postdissolution claims against the former shareholders of a dissolved corporation under the equitable "trust fund" theory. We emphasize, however, that this determination does not insulate dissolving corporations or their shareholders from actions for the recovery of fraudulently transferred assets. Thus if a corporation were to mass produce defective products and then dissolve to avoid liability, "leaving a multitude of potential claims in its wake" (Henn & Alexander, *supra,* 56 Cornell L.Rev. 865, 909, fn. 222), grave questions would be raised under the Uniform Fraudulent Transfer Act. (See Civ. Code, §§ 3439.01, subd. (b), 3439.04.) In the case at bar, no such allegation was made.

The judgment of the Court of Appeal is reversed with directions to affirm the judgment of dismissal entered by the superior court.

Lucas, C. J., Broussard, J., Panelli, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.

---

[4]In an attempt to distinguish the weight of this authority, the Court of Appeal accorded great significance to the limited time period during which predissolution claims must be brought under statutes modelled after section 105 of the 1969 Model Business Corporations Act. Looking to the decisions in *Hunter, supra,* 620 S.W.2d 547, and *Blankenship* v. *Demmler Manufacturing Co., supra,* 411 N.E.2d 1153, the court asserted that "It was difficult for [the] courts to believe that their respective state legislatures intended to create a system with a two- or three-year limitation on predissolution claims but with no limitation on postdissolution suits. . . . Unlike the Texas and Illinois statutes, California's section 2011(a) imposes no time limitation on predissolution claims. It is thus not even impliedly inconsistent with the legislative intent in enacting that section to retain the broader-but-more-cumbersome 'trust fund' doctrine as to post dissolution causes of action." Neither the *Hunter* nor *Blankenship* court, however, relied solely on this argument; instead, both courts relied initially and primarily on the absence of any statutory authorization for postdissolution claims. (See *Hunter, supra,* 620 S.W.2d at pp. 550-551; *Blankenship, supra,* 411 N.E.2d at p. 1155.)