LABORDE, Judge.
In this case, appellant, Leviathan Gas Pipeline Company (Leviathan), appeals the trial court’s holding that its cause of action against Texas Oil, et al., was barred by the Texas Business Corporate Survival Statute. Finding no error on the part of the trial court, we affirm.
FACTS
Plaintiff (Leviathan) is the successor-in-interest to various entities referred to throughout this litigation as the “Tatham Companies”, which is a Texas Corporation. In 1983, the Board of Directors of Tatham Pipeline Company decided to sell all of the company’s subsidiaries or their assets. These subsidiaries will be referred to as the “Tatham Companies”. The Tatham Companies were engaged in the operation of natural gas pipelines located mainly in Louisiana. Tatham Pipeline entered into negotiations with various companies, including defendants-appellees, Texas Oil & Gas Corporation (TXO) and Delhi Gas Pipeline Corporation (Delhi), for the sale of the Tatham Companies. Tatham Pipeline and its subsidiaries revealed sensitive proprietary information, “confidential information”, to defendants. As a precondition to disclosing the confidential information, Tat-ham Pipeline required defendants to execute confidentiality agreements with Tat-ham Pipeline, dated March 22, 1983, in which each of them promised to preserve the confidentiality of the confidential information received from Tatham Companies. Sometime after defendants executed the confidentiality agreements, defendants entered into a secret joint venture with Mid-Con Corporation (MidCon) for the sole purpose of purchasing the Tatham Companies. Tatham Companies was unaware of the existence of the secret joint venture until immediately prior to the signing of the instruments of sale. Tatham Companies believed it was negotiating only with defendants.
During the course of negotiations between defendants and Tatham pipelines, and without the knowledge or consent of Tatham Pipeline or any of the Tatham Companies, defendant disclosed confidential information to MidCon and representatives prior to November 1, 1983, as well as agents and employees of MidCon’s wholly-owned subsidiary, Natural Gas Pipeline Company of America (NGPL). Plaintiff contends that this disclosure of confidential *417 information by defendants was in direct breach of their undertakings in the confidentiality agreements.
During the time that Tatham Pipeline was negotiating with defendants, Tatham Pipeline was also negotiating a transaction with MidCon’s subsidiary, NGPL. These negotiations centered around the utilization of one of the pipeline systems owned by the Tatham Companies called the Tidal Pipeline Systems. Tatham Companies and NGPL entered into an agreement as a result of these negotiations. Plaintiff asserts this agreement would have significantly enhanced the value of the Tatham Companies and thus, would have affected the price received by Tatham Pipeline upon the sale of the Tatham Companies. Plaintiff also alleges that in furtherance of the overall objective of the secret joint venture and as a result of the disclosure of confidential information by defendants to Mid-con, Midcon caused NGPL to renounce the agreement previously entered into between NGPL and the Tatham Companies relative to the utilization of the Tidal Pipeline System. Plaintiff contends the purpose of the renunciation by NGPL was to reduce the fair market value of the Tatham Companies and convert this lost value to the benefit of the secret joint venture between defendants and MidCon. Plaintiff further contends that as a result of the activities of the secret joint venture, the secret joint venture was able to reduce the market price Tatham Pipeline could realize from the sale of its subsidiaries and the secret joint venture was able to place Tatham Pipeline and its subsidiaries in a position where Tatham had no business alternative but to sell the assets of its pipeline subsidiaries to the joint venture. Plaintiff contends that had defendants and MidCon not fraudulently concealed the true facts, Tat-ham Pipeline would not have continued to supply confidential information to defendants.
Between October 31 and November 1, 1983, representatives of Tatham Pipeline met in Dallas, Texas, with representatives of TXO and Delhi to execute purchase and sale agreements in connections with the acquisition of the assets of Tatham Pipeline. At that time, Tatham Corporation was the sole shareholder of Tatham Pipeline, and Thomas P. Tatham (Tatham) and Ben T. Morris (Morris) were the sole shareholders of Tatham Corporation. Tatham and Morris attended the meeting in Dallas.
On October 31, 1983, prior to the execution of the purchase and sale agreements, TXO and Delhi formally advised Tatham Pipeline that MidCon had become a partner with TXO in the acquisition of the Tatham Pipeline assets. On October 31, 1983, Morris discussed with Tatham his thoughts that TXO and Delhi may have breached the confidentiality agreements and may have provided information to MidCon. On October 31, 1983, Tatham discussed with Charles Moor and Rick Burdick, two attorneys representing Tatham Pipeline in the acquisition, the possibility that TXO and Delhi may have breached the confidentiality agreements. The next day, November I, 1983, Tatham Pipeline executed the purchase and sale agreements without raising any objections to MidCon’s involvement in the acquisition.
The sale of the assets of the Tatham Companies was closed on December 31, 1983. After the sale, Tatham Companies and Tatham Pipeline wound up its affairs and the various corporations were dissolved. Tatham Pipeline was dissolved by issuance of a Certificate of Dissolution by the Texas Secretary of State on September II, 1984 and any claims owned by Tatham Companies were assigned to the shareholders and ultimately to Plaintiff.
On June 11, 1986, Morris was deposed in connection with unrelated litigation between Colorado Interstate Gas Company and NGPL. In the course of that deposition, Morris learned for certain that TXO and Delhi, prior to November 1, 1983, had provided to MidCon information which TXO and Delhi had received from Tatham Pipeline.
Plaintiff filed its original petition on April 20, 1990 against TXO, MidCon, and NGPL, for breach of contract, seeking $50 million in damages. On February 28, 1991, Plaintiff filed its first amended petition *418 which added Delhi as a party defendant and substituted Occidental Petroleum Corporation (Occidental) for MidCon, Occidental being the successor to MidCon. In the first amended petition, plaintiff alleged TXO and Delhi entered into separate confidentiality agreements with Tatham Pipeline, that TXO and Delhi breached those confidentiality agreements, that Tatham Pipeline suffered damages as result of the breach and that plaintiff acquired these causes of action by assignments and conveyances. On April 22,1991, plaintiff, Mid-Con, and NGPL filed their joint motion for dismissal with prejudice with respect to all claims previously asserted by plaintiff against MidCon and NGPL. The order granting this motion was signed the same day, thus, MidCon and NGPL are no longer parties to this case. On March 18, 1991, defendants, TXO and Delhi, filed their exceptions to the first amended petition which contained their peremptory exception based on the Texas corporate survival statute. On April 8, 1991, plaintiff, Leviathan, filed its opposition to the peremptory exception filed by defendants. Defendants filed a reply memorandum in support of peremptory exception on April 18, 1991 and on October 15, 1991, plaintiff filed its reply to defendants memorandum in support of peremptory exception.
On April 22, 1991, plaintiff filed its motion to dismiss as of non-suit without prejudice on April 22, 1991 and defendants filed a reconventional demand against plaintiff on May 2, 1991. A judgment of preliminary default was entered against plaintiff on the motion for entry of preliminary default filed by defendants. Plaintiff filed a motion for a new trial on June 21, 1991, seeking to set aside the preliminary default. The parties filed a joint motion and agreement regarding pretrial matters which was granted on October 1, 1991. Pursuant to this order, the court would consider the first peremptory exception based on the Texas corporate survival statute, as a ruling on this exception would be dispositive of the entire case. On November 25, 1992, a hearing was held on this exception. Reasons for judgment were issued on December 18, 1991 and judgment was entered on February 27, 1992, maintaining defendants exception and dismissing plaintiffs claims with prejudice. The trial court held that plaintiffs claims were barred by the Texas corporate survival statute, Article 7.12 of the Texas Business Corporation Act.
Plaintiff appeals asserting as assignment of error that the trial court erred in holding that plaintiffs claims were barred by the Texas Corporate Survival Statute. Plaintiff sets forth two issues: First, plaintiff asserts fraudulent concealment by defendants of the claims asserted by Leviathan in this case prevents the application of the bar of limitations. Second, plaintiff asserts the application of Article 7.12 to the facts of this case violates the open courts provision of the Texas Constitution.
LAW
The trial court found that as Article 7.12 is a corporate survival statute and not a statute of limitations, the statute is substantive. As Article 7.12 is substantive, Texas law, as the law of the state of incorporation, is the applicable law. See Oklahoma Natural Gas Company v. Oklahoma, 273 U.S. 257, 47 S.Ct. 391, 71 L.Ed. 634 (1927).
* FRAUDULENT CONCEALMENT
Article 7.12 of the Texas Business Corporation Act (the Texas Corporate Survival Statute) provides in pertinent part:
“A. A corporation dissolved (1) by the issuance of a certificate of dissolution or other action by the Secretary of State ... shall continue its corporate existence for a period of three (3) years from the date of dissolution, for the following purposes:
(1) prosecuting or defending in its corporate name any action or proceeding by or against the corporation;
(2) permitting the survival of any remedy not otherwise barred by limitations available to or against the corporation, its officers, directors, shareholders, or creditors, for any right or claim *419 existing, or any liability incurred, before the dissolution....”
“C. If after the expiration of the three-year period there still remains unresolved any action or proceeding not otherwise barred by limitations begun by or against the corporation before its dissolution or within three (3) years after the date of its dissolution, the corporation shall continue to survive only for the purpose of that action or proceeding, until any judgment, order, or decree in the action or proceeding is fully executed. If at the expiration of the three-year period no action or proceeding on any remedy available to or against the corporation, its officers, directors, shareholders, or creditors, for any right or claim existing, or any liability incurred, before the dissolution shall have been brought, then that remedy shall abate.” (Emphasis added.)
The trial court held this article bars plaintiff’s claims as it failed to assert its claims within three years of the dissolution of the Tatham Company. Plaintiff claims the defendants fraudulently concealed the facts which led to its cause of action and this fraudulent concealment estops defendants from asserting limitations. Plaintiff relies on Bordelon v. Peck, 661 S.W.2d 907 (Tex.1983) to support its position. Bordelon, supra, was a medical malpractice action in which plaintiff alleged her surgeon had left a needle in her abdomen and fraudulently concealed this information from her. The Texas Supreme Court held the state statute which provided that health care liability claims must be commenced within two years of occurrence did not abolish the claim of fraudulent concealment as an equitable estoppel to the affirmative defense of limitations in this medical malpractice action. The courff thus concluded that there were factual issues as to the surgeon’s concealment which precluded summary judgment.
In further support of its position, plaintiff relies on Pacific Scene, Inc. v. Penasquitos, Inc., 46 Cal.3d 407, 250 Cal.Rptr. 651, 758 P.2d 1182 (1988) (In Banc) which involved a California statute that barred suits against dissolved corporations on claims arising after dissolution. The court held that the legislature has generally occupied the field with respect to the remedies available against the former shareholders of dissolved corporations, and thus preempted antecedent common law causes of action. The court also found the trust fund theory conflicts with the specific provisions of the barring statute so plaintiffs postdissolution claim under the trust fund theory was barred. Plaintiff places emphasis on the court’s statement that their holding does not insulate dissolving corporations or their shareholders from actions for the recovery of fraudulently transferred assets and if a corporation were to mass produce defective products and them dissolve to avoid liability, the shareholders would be liable under the fraudulent transfer act.
We find plaintiff’s reliance on these two cases misplaced. The case of Bordelon, supra, is inapplicable because it is a medical malpractice action discussing a statute of limitations. Article 7.12 is a survival statute, not a statute of limitations. We further find plaintiff’s reliance on the language in Pacific Scene, supra, misplaced as the court was addressing the issue of a corporation mass producing defective products and its dissolution to avoid liability. In the instant case, a dissolved corporation is not seeking to avoid liability, but rather, the dissolved corporation is seeking to hold defendants liable.
There are no Texas cases directly on the point of whether suit may be brought on the claims of a dissolved Texas corporation after the expiration of the three-year corporate survival period set forth in Article 7.12. However, we find the case of Riley v. Fitzgerald, 178 Cal.App.3d 871, 223 Cal.Rptr. 889 (1986), a California case, applying Texas law, to be controlling. In Riley, a Texas corporation, Mindevco, Inc., entered into a joint venture with the defendants involving various oil leases in the state of California. Plaintiffs alleged that unbeknownst to Mindevco, the defendants made secret assignments of overriding interests in the oil leases, thereby diminishing the value received by Mindevco and yielding *420 substantial profits to the defendants. On April 21, 1978, Mindevco dissolved. On December 13, 1983, James C. Riley, Jr. and James C. Riley, III, claiming to be the assignees of all of Mindevco’s assets and its former shareholders, sued the defendants for damages, claiming injuries to and fraud upon Mindevco. The court held the Texas Business Corporation Act, Article 7.12, providing that claims for damages to dissolved Texas corporations must be brought within three years of dissolution, was not tolled under the equitable doctrine of estoppel on the basis of allegations of fraudulent concealment. The court stated:
[3] Rileys assert that Texas would allow the equitable doctrine of estoppel to toll the statute since they allege fraudulent concealment. However, courts interpreting corporate continuance statutes similar to Article 7.12 have refused to apply equitable remedies to defeat survival statutes in contrast to statutes of limitation. In fact, in Hunter v. Fort Worth Capital Corp., [(Tex.1981) 620 S.W.2d 547], the Texas Supreme Court refused to extend the equitable trust fund theory to post-dissolution claims. There, the court, faced with a suit by an injured worker against former shareholders of a dissolved corporation for injuries when an elevator installed and serviced by the dissolved corporation fell on him eleven years after corporate dissolution, held that Article 7.12 provides statutory remedies for pre-dissolution claims only. It further held that “Article 7.12 expresses a legislative policy to restrict the use of the trust fund theory to pre-dissolution claims, and to protect shareholders, officers and directors of a dissolved corporation from prolonged and uncertain liability.”
Thus, we hold fraudulent concealment does not toll the running of the three years as set forth in the Texas Survival Statute in Article 7.12 in which plaintiff had to bring its action. Even if fraudulent concealment applied to the corporate survival statute, the only effect of the concealment is that the running of the survival period would be suspended until sufficient facts are known which would cause inquiry leading to discovery of the claim. Tatham Pipeline was dissolved on September 11, 1984. The corporate survival period ended on September 11, 1987. More than one year prior to the end of the survival period, on June 11, 1986, Morris, an undivided owner of the claim, obtained actual knowledge that the claim existed. Suit was not filed until April 20, 1990. Plaintiff asserts that there were numerous attempts through 1989 to investigate and document additional evidence of the breach and this was the reason it did not file until April 20, 1990. Plaintiff should have filed it petition as soon as it had notice of a cause of action, which was on June 11, 1986, and then conducted its discovery. Had it done so, the action would not be barred as it would have fallen within the three year period set forth in Article 7.12. For this forgoing reasons, we find the trial court was not manifestly erroneous in finding Article 7.12 barred plaintiffs claims.
CONSTITUTIONALITY OF ARTICLE 7.12
Plaintiff asserts the application of Article 7.12 of the Texas Business Corporation Act to the facts of this case violates the “open courts” provision of the Texas Constitution. Article 1, Section 13 of the Texas Constitution provides: “All courts shall be open, and every person for an injury done to him, in his lands, goods, person or reputation shall have a remedy by due course of law.” This Texas constitutional provision has been recognized as ensuring that Texas citizens bringing common law causes of action will not unreasonably be denied access to the courts. See Sax v. Votteler, 648 S.W.2d 661 (Tex.1983). Sax, supra, involved a medical malpractice action in which the Texas Supreme Court held that the statute removing previously allowed tolling of the two-year period of limitations in medical malpractice actions by minors after reaching age of six, is violative of the due process guarantee set forth in the open courts provision of the Texas Constitution insofar as it effectively abolishes a minor’s right to bring a well- *421 established common-law cause of action without providing a reasonable alternative.
The court in Sax, supra, set forth a test for determining whether a statute violates the Texas Constitution open courts doctrine. The court stated: “We hold, therefore, that the right to bring a well-established common law cause of action cannot be effectively abrogated by the legislature absent a showing that the legislative basis for the statute outweighs the denial of the constitutionally-guaranteed right of redress.”
In the instant case, the legislature has not restricted a well-recognized common law cause of action by the enactment of the Corporate Survival Statute because suits by or against dissolved corporations were not well-recognized common law causes of action. At common law, a corporation could never sue or be sued after dissolution. In Hunter v. Fort Worth Capital Corp., 620 S.W.2d 547 (Tex.1981), the court held “At common law, dissolution terminated the legal existence of a corporation. Once dissolved, the corporation could neither sue nor be sued, and all legal proceedings in which it was a party abated”.
Two recent Texas cases hold that Article 7.12 does not restrict a well-recognized common law cause of action, and therefore, cannot be in violation of the open courts doctrine. See Anderson v. Hodge Boats & Motors, Inc., 814 S.W.2d 894 (Tex.Civ. App.— Beaumont 1991, writ denied) and Weibel v. Martin Industries, Inc., 806 S.W.2d 345 (Tex.App.—Fort Worth, 1991 writ den’d). The court in Anderson, supra, stated: “Common law does not provide redress against a corporation which has ceased to exist. The open courts doctrine does not create new rights but only protects those rights which exist at common law. Such rights are not available here”.
Thus, the first part of the Sax test is not met. Therefore, we find the trial court did not err in finding Article 7.12 does not violate the Texas Constitution open courts doctrine.
DECREE
For the reasons assigned above, the judgment appealed is affirmed. Costs of this appeal are assessed against appellant, Leviathan Gas Pipeline Company.
AFFIRMED.