Merrimack,
No. 4296.

ARTHUR S. PATEY & a. v. ROY W. PEASLEE.

Argued December 7, 1954.

Decided January 19, 1955.

*Wyman, Starr, Booth, Wadleigh & Langdell* and *Stanton E. Tefft* (*Mr. Wyman* and *Mr. Tefft* orally), for the plaintiffs.

*Orr & Reno* and *Charles H. Toll, Jr.* (*Mr. Toll* orally), for the defendant.

KENISON, C. J. At common law the marriage of an insane person was absolutely void. *True* v. *Ranney,* 21 N. H. 52; *Keyes* v. *Keyes,* 22 N. H. 553. Since the marriage was void, it could be challenged in a collateral proceeding and the surviving spouse could take no interest in the marital property. *Hampstead* v. *Plaistow,* 49 N. H. 84, 98; *Hayes* v. *Rollins,* 68 N. H. 191. Where the common-law rule has not been modified by statute, a collateral attack upon such a marriage after the death of a spouse has been allowed. *Unity* v. *Belgrade,* 76 Me. 419; *Williams* v. *Williams,* 83 Colo. 180. If, however, such a marriage is regarded as voidable, it can be attacked only in a direct proceeding during the lifetime of both spouses. Anno. 76 A. L. R. 769; 3 Nelson, Divorce and Annulment (2nd *ed.*) *s.* 31.07; *In re Romano's Estate,* 40 Wash. (2d) 796.

In this state the Legislature has specifically provided that bigamous marriages and marriages within certain degrees of consanguinity or affinity of the parties are void. R. L., *c.* 338, *ss.* 1, 2, 3; R. L., *c.* 339, *s.* 1. Likewise the marriage of males less than fourteen years of age and females of less than thirteen years of age are declared "null and void." R. L., *c.* 338, *s.* 4. While certain other marriages are prohibited or made illegal for reasons of age or mental incompetency, these statutes have been consistently construed as making the marriage voidable and not void. *Schoolcraft* v. *O'Neil,* 81 N. H. 240. R. L., *c.* 338, *s.* 10, as amended by Laws 1949, *c.* 121, reads as follows: "No woman under the age of forty-five years, or man of any age,—except he marry a woman over the age of forty-five years,—either of whom is epileptic, imbecile, feeble-minded, idiotic or insane, shall hereafter inter-

marry or marry any other person within this state unless permitted by the state department of health." This statute was construed as making a marriage in violation of its terms only voidable. "As the marriage was not void and the husband is dead, no inquiry can now be made into its validity." *Lau* v. *Lau,* 81 N. H. 44, 45. 3 Nelson, Divorce and Annulment (2nd *ed.*) *s.* 31.21.

Of course the Legislature may prescribe that the marriage of a person with any degree of mental incompetency shall be void but it is plain that it has been careful not to do so. *Cf.* R. L., *c.* 160, *s.* 14. The rule of *Lau* v. *Lau,* 81 N. H. 44, that the marriage of an incompetent is voidable and free from attack after death has been followed in many cases including some recent ones. *In re Romano's Estate,* 40 Wash. (2d) 796; *Henderson* v. *Ressor,* 265 Mo. 718; *Vance* v. *Hinch,* (Ark.) 261 S. W. (2d) 412; 29 N. Y. U. L. Rev. 1142 (1954).

There is a Hobson's choice whether the Legislature declares the marriage void which favors the heirs or declares the marriage voidable which favors the surviving spouse. The former method may allow the heirs to step forward after death and claim the fruit of their own neglect. The latter method may allow a scheming suitor to marry for money. "It is apparent that the question presented here is an important one and that grave inequities might result from either interpretation. If it is held that such a marriage is voidable only and cannot be attacked after the death of the allegedly incompetent party then a situation arises where fraud could easily be perpetrated. For example, a designing person could effect a marriage with a known imbecile a few days or hours before the latter's death and there would seem to be no way to prevent such a person from profiting unjustly by his designing acts. On the other hand if it is held that such a marriage is absolutely void and can be collaterally attacked even after the death of the alleged incompetent it would be possible for designing heirs to set aside the sacred vows of matrimony and deprive the surviving spouse of valuable property to which he or she might otherwise be legally and morally entitled to receive." *Vance* v. *Hinch, supra,* 414.

In urging that a marriage procured by fraud and misrepresentation is invalid, the plaintiffs rely on *Gatto* v. *Gatto,* 79 N. H. 177, decided in 1919, for the proposition that fraud with respect to any matter material to the marriage relation will be sufficient ground to annul a marriage contract. In 1932, that case was recon-

sidered in a fifteen page opinion "to consider if the reasoning of the case is to receive credit as accepted and established authority." *Heath* v. *Heath*, 85 N. H. 419, 421. The broad language of the former case was disapproved and it was indicated that the holding of the case was to be confined to its own particular and peculiar facts. 3 Nelson, Divorce and Annulment (2nd *ed.*) *s.* 31.29. Although many annulment cases have been considered since that time, it has never been cited as an authority in this court in any subsequent case. The annulment of a marriage contract for fraud and misrepresentation is governed by the principles laid down in the *Heath* case. "Whatever the differences in definition of the kind and nature of fraud required to warrant an annulment, deception by one of the parties as to character, morality, habits, wealth, or social position is generally held insufficient." *Heath* v. *Heath, supra,* 433. Annulment is not granted for any and every kind of fraud. "Premarital falsehoods as to love and affection are not enough, nor disclosure that one partner 'married for money.'" *Woronzoff-Daschkoff* v. *Woronzoff-Daschkoff,* 303 N. Y. 506, 512. To justify annulment the fraud must relate to conditions making "normal marital relations . . . morally impossible" and the representations "'must be of . . . something making impossible the performance of the duties'" of the marriage relation. *Heath* v. *Heath, supra,* 429. See *Skavina* v. *Skavina,* 93 N. H. 335; 503 Briefs & Cases 743. It is the function of the Legislature and not of the judiciary "to invent new grounds" for the annulment of marriages. *Heath* v. *Heath, supra,* 433.

While the plaintiffs allege fraud upon themselves as well as their intestate, they seek no relief except that which would result from annulment of the marriage. Apart from an order of nullity, an order "debarring" the defendant from inheritance could be entered only in plain disregard of the statutes relating to the rights of surviving husbands. Whether "ordinary fraud" (*Heath* v. *Heath, supra,* 430), differing in kind and nature from the fraud which would warrant an annulment, might nevertheless justify exercise of equity jurisdiction to impose a constructive trust with respect to property acquired from the decedent (*Ibey* v. *Ibey,* 93 N. H. 434; *Latham* v. *Father Divine,* 299 N. Y. 22; Pomeroy, Equity Jurisprudence (5th *ed.*) *ss.* 155, 1053; Scott on Trusts, *s.* 488) is an issue not presented in this case. Similarly, although the plaintiffs' petition alleges that the defendant's conduct after his marriage to the plaintiffs' intestate "hastened her death," no felonious conduct

is alleged such as might be claimed to warrant application of the rule applied in some jurisdictions and, supported by statute in others, that an heir or spouse will not be permitted to profit from his own homicidal conduct. *Bird* v. *Plunkett*, 139 Conn. 491; *Vesey* v. *Vesey*, 237 Minn. 295; *Bryant* v. *Bryant*, 193 N. C. 372. See anno. 32 A. L. R. (2d) 1100.

We conclude that the plaintiffs have not stated a cause for annulment which is cognizable in the courts of this state, because the marriage was voidable rather than void, and the proceedings were not brought "during the lives of both the contracting parties." *Hilliard* v. *Baldwin*, 76 N. H. 142, 144. The petition fails to state any other cause which would prevent operation of the statutes establishing the rights of a surviving spouse in the estate of his deceased wife. R. L., c. 359, ss. 9, 12, 13.

In view of the result reached it is unnecessary to consider whether the petition was also defective for failure to allege the particular facts constituting the asserted fraud and misrepresentation. *Belisle* v. *Belisle*, 88 N. H. 459, 461; *Blood* v. *Electric Co.*, 68 N. H. 340, 343; *Berlin &c. Ass'n* v. *Mayor &c. of Berlin*, 87 N. H. 80, 81.

*Petition dismissed.*

All concurred.