In re the ESTATE OF Duncan R.
DANFORTH, Deceased.

Frank DANFORTH and Janette
Fiene, Respondents,

v.

Loretta Ollison DANFORTH, Appellant.

No. 14141.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 4, 1986.

Motion for Rehearing or To Transfer
to Supreme Court Denied
Feb. 19, 1986.

Application to Transfer Denied
March 25, 1986.

Bart L. Strother, Morris & Foust, Kansas City, for respondents.

John C. Milholland, Cenobio Lozano, Jr., Harrisonville, for appellant.

TITUS, Presiding Judge.

Doctor Duncan R. Danforth, a 75-year-old man of substantial means, married 21-year-old Loretta Ollison (Loretta) on Wednesday, August 13, 1980. Immediately following the ceremony the newlyweds went to a lawyer's office where Dr. Danforth executed a newly prepared will naming Loretta a principal beneficiary of his estate. On Sunday, August 17, 1980, Dr. Danforth was murdered by Michael Stith (Stith), Loretta's lover, after two exconvicts employed by Stith and Loretta to kill Dr. Danforth reneged on their previous agreement to do so. Loretta was jury-convicted of conspiracy to commit capital murder, § 564.016,[1] and sentenced to imprisonment for ten years which was affirmed upon appeal. *State v. Danforth,* 654 S.W.2d 912 (Mo.App.1983). Stith was jury-convicted of capital murder, formerly § 565.001, and sentenced to life imprisonment without the possibility of parole for 50 years. *State v. Stith,* 660 S.W.2d 419 (Mo.App.1983). After the probate court granted letters testamentary to Dr. Danforth's 1980 will, the children of Dr. Danforth filed a will contest case in which the circuit court entered judgment setting aside the 1980 will on the basis of fraud and establishing a previous 1978 will as the last will and testament of Dr. Danforth. *Danforth v. Danforth,* 663 S.W.2d 288 (Mo.App.1983). As the surviving spouse of Dr. Danforth, Loretta on May 11, 1984, filed her election to take against the 1978 will. § 474.160. Dr. Danforth's children filed a motion "in opposition" and "objecting" to such election and prayed for an order and judgment denying

1. Statutory references are to V.A.M.S.

Loretta inheritance, etc. After a bench trial, the court entered judgment denying Loretta all rights as the widow. This appeal ensued.

Loretta proffered no evidence in this matter. At the trial hereof Dr. Danforth's children, among other things, offered Exhibit C consisting of a copy of the transcript of the trial wherein Loretta was tried and convicted of conspiracy to commit capital murder. Loretta's first point relied on, in substance, is that as the children introduced the criminal case transcript, wherein Loretta and her parents as part of her defense testified Loretta's marriage to Dr. Danforth was not induced by fraud, the children are bound thereby and therefore the trial court erred in entering judgment denying Loretta's election to take against the 1978 will. This ignores the fact the transcript and opinion of *Danforth,* 654 S.W.2d 912, were expressly offered and admitted for the limited and specific purpose of providing the court nisi with factual background. When evidence, as here, is proffered and admitted for one purpose only it may not be used for another and different purpose. 88 C.J.S. Trial, § 87 (1955). Courts take judicial notice of the laws of Missouri which include opinions of appellate courts, and it is permissible to examine the record resulting in an opinion to ascertain the grounds upon which an opinion is based. *Matthews v. McVay,* 241 Mo.App. 998, 1006[6, 7], 234 S.W.2d 983, 988[6, 7] (1950). Even if we assume, and we do not, that the introduction of the transcript for the limited purpose noted somehow made Loretta and her parents witnesses for the children, Loretta's contentions overlook the rule that a party is not bound by the testimony of his witnesses insofar as such testimony, as here, is strongly contradicted by the party's other evidence. *Young v. Kansas City Southern Railway Company,* 374 S.W.2d 150, 153[3] (Mo.1964). Or, differently stated, a party is bound by testimony of a witness called by him only if that testimony stands uncontradicted. If such testimony is con-

tradicted by other evidence and circumstances, the party offering the witness is not bound by the unfavorable testimony. *International Harvester Credit v. Formento*, 593 S.W.2d 576, 578[2] (Mo.App. 1979). Furthermore, as arbiter of the facts, the trial judge had leave to believe or disbelieve all, part or none of the testimony of any witness and, even if such testimony is not contradicted, the trial court does not have to believe it. *Barnes v. Bank of Bourbon*, 619 S.W.2d 906, 907[2] (Mo.App. 1981); *Gee v. Gee*, 605 S.W.2d 815, 818[5] (Mo.App.1980). Loretta's first point is denied.

In *Danforth v. Danforth*, 663 S.W.2d 288, the children of Dr. Danforth in 1980 filed a two-count petition to contest his 1980 will. § 473.083. Count I alleged that when the doctor executed the 1980 will he was not possessed of the necessary capacity to make a will, and that the will was procured by Loretta's undue influence and fraud and was therefore invalid. Count II "in the alternative," inter alia, alleged Loretta "was reduced to widowhood by her own felonious act [and] is therefore forever barred from her inheritance rights" or from taking under the will. The children, ere trial, voluntarily dismissed Count II "without prejudice" and, per jury verdict, it was held and affirmed on appeal the 1980 will was procured by Loretta's fraud and was invalid. In 1981 Loretta filed a four-count Petition for Damages for libel because of what Dr. Danforth's children had alleged in Count II of the Petition to Contest Will. The children answered in the form of general denials and alleged that none of Loretta's counts stated a cause of action and that the words used by the children in Count II of the will contest action were privileged. The children filed no counterclaim and before the cause came to trial, Loretta dismissed her Petition for Damages "with prejudice to its refiling and at the cost of plaintiff."

As written, Loretta's second point relied on is diffuse and difficult to comprehend. The best we can understand it is that Loretta is claiming the court nisi erred in denying her election to take against the 1978 will because the children's claimed objection to such election "was required to have been filed as a compulsory counterclaim in the libel action but it was not [and the children's present] claim is barred for failure to plead it as a counterclaim in the libel action."

 Even if it be assumed, and we make no such assumption, *see* Rule 55.-32(a), V.A.M.R., the children's present contentions were required to be made in a compulsory counterclaim in the libel action, the trouble we find with Loretta's second point is that the libel action was voluntarily dismissed with prejudice without a trial and up to the time of dismissal the trial court had the discretionary power to permit the children, by amendment, to file such a counterclaim. Rule 55.32(e), V.A.M.R. A dismissal, as here, with prejudice simply serves as a mechanism to terminate the litigation rather than to adjudicate the issues therein involved. *Denny v. Mathieu*, 452 S.W.2d 114, 118[3] (Mo. banc 1970); *Peoples-Home Life Ins. Co. v. Haake*, 604 S.W.2d 1, 8–9[9] (Mo.App.1980). Under such circumstances, the failure of the children to counterclaim before the dismissal, if such was necessary, should not act as a bar to any present assertions by them. *Black v. Sanders*, 414 S.W.2d 241, 244[4] (Mo.1967). Loretta's second point relied on is denied.

 As written, Loretta's third point relied on is complex and prolix. In substance, the understandable portion of the point and the argument thereunder, is the claim that fraud cannot be the basis for excluding her from benefiting from the estate as fraud is not grounds for posthumously annulling a marriage. She also suggests that as § 474.160 does not expressly divest the rights there given a surviving spouse because she has been convicted of conspiracy to commit capital murder, the trial court erred in holding her conviction served to forfeit such statutory rights.

It was held in *In re Estate of Laspy*, 409 S.W.2d 725, 736[9] (Mo.App.1966), that the

judgment of the wife's criminal conviction "shall be accepted as conclusive evidence in this civil suit that the killing of her husband was not done in self-defense, was legally unjustifiable, and was an intentional manslaughter—hence, a crime that bars her from any benefit arising out of her victim's estate, and that she is collaterally estopped by that judgment from further consideration of the issues it determined." The term "surviving spouse" as used in § 474.160 and other sections of the probate code, "means one who has been reduced to that condition by the ordinary and usual vicissitudes of life, and not one who, by felonious act, has himself created that condition." *Perry v. Strawbridge*, 209 Mo. 621, 645–646[5], 108 S.W. 641, 648[7] (1908).

A reading of *State v. Danforth*, and the other opinions cited in the first paragraph hereof, quickly demonstrates that Loretta's fraud in procuring the marriage and her conspiracy in the murder of Dr. Danforth cannot be disputed. Whether the marriage was void or voidable is not in question as the marriage itself is not under collateral attack. Instead, Loretta's undertaking to enrich herself via her fraud and conspiracy to commit murder is under direct attack. If, as the record demonstrates, Loretta's marriage to Dr. Danforth was not in good faith and without love but only with mercenary motives to acquire his property, she was guilty of fraud. *Andris v. Andris*, 343 Mo. 1162, 1166[1], 125 S.W.2d 38, 40[1] (1938). As quoted by *State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 502 (Mo.App. 1985), "no one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his iniquity, or to acquire property by his own crime." If Loretta's arguments are sound, she would be permitted to receive an estate, or a major portion thereof, which issues from her own fraud and which emanates from her own involvement in criminally obtaining the death of her supposed benefactor. We recite from respondents' brief: "Loretta attempts to escape the law by arguing that her particular iniquity has not yet been held to bar a spouse. The same argument was made by Mr. Evans

(*Perry v. Strawbridge*) and by Mrs. Laspy (*In Re Estate of Laspy*). Like them, Loretta too can take solace in being the first." The third point relied on is denied.

Loretta's fourth and final point relied on reads: "The court erred in entering judgment against appellant because there is no competent evidence in the record to prove that Mike Stith murdered appellant's husband, a condition precedent to holding appellant to be vicariously liable for murder and barred from inheritance by having murdered her husband, in that, respondent's only evidence on the point [an appellate court opinion] is inadmissible hearsay, admitted over objection of appellant."

Section 477.231, in part, declares: "The supreme court may declare the published volumes of the decisions of the supreme court as the same are published by any person, firm or corporation, to be official reports of the decisions of the supreme court, and the court of appeals may jointly make a similar declaration with respect to published volumes of the opinions of the court of appeals." In accordance with such authorization, there appears in the front portion of each volume of the South Western Reporter—Missouri Cases declarations of the Missouri Supreme Court and the Missouri Courts of Appeal that published volumes of the decisions of each court appearing in the South Western Reporter be the official reports of the opinions of such courts.

▬ Loretta's final point ignores the provisions of § 477.231, the declaration just noted and the fact that the trial court took "judicial notice" of the three cases cited in the opening paragraph of this opinion as reported in the South Western Reporter. The trial court did not take "judicial notice" of the photocopies of such opinions, only the reported opinions, as the photocopies were employed as a matter of convenience only. Also, the trial court was asked to "judicially notice" *State v. Stith* for the limited and lone purpose of the fact of Stith's conviction and not as evidence of the facts upon which his murder conviction was

predicated. Moreover, no objection at trial was made to the photocopy exhibits of the published opinions for the reasons they were photocopies. Upon appeal the only objections to evidence that can be considered are those that are made in the trial court. *State ex rel. State Highway Comm. v. Northeast Building Company,* 421 S.W.2d 297, 301[4] (Mo.1967).

Loretta's final point is denied and the judgment nisi is affirmed.[2]

FLANIGAN and GREENE, JJ., concur.

2. Respondents' "request for damages" pursuant to Rule 84.19 is overruled. Also, "Appellant's Motion to Strike Respondents' Statement of Facts" which was "taken with the case" is hereby overruled.