**Robert J. RIDDELL, Appellant,**

v.

**Irvin H. EDWARDS, Appellee.**

**No. S–10025.**

Supreme Court of Alaska.

Sept. 5, 2003.

---

Robert J. Riddell, pro se, Ward Cove.

Bryan T. Schulz, Holman & Schulz, Ketchikan, for Appellee (no brief filed).

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

In a probate proceeding involving the estate of his deceased wife, Robert J. Riddell petitioned as a surviving spouse to receive his statutory homestead allowance, family allowance, and elective share. Despite finding that Riddell had "ingratiated himself" to his wife before their marriage "for the purpose[ ] of obtaining her assets" and that his wife had suffered from dementia for the majority of their relationship, the superior court ruled that Riddell and his wife had been validly married and that the estate had no standing to argue that the marriage was voidable. The court nonetheless concluded that Riddell's unconscionable conduct warranted establishing a constructive trust to give the estate Riddell's statutory benefits. Because the superior court's finding that the marriage was valid is not disputed and because Alaska law unconditionally gives the surviving spouse of a valid marriage the right to marital allowances and a share of the estate based solely on the existence of a valid marriage, we hold that the necessary elements for a constructive trust are lacking and that establishing the trust exceeded the court's

equitable powers. We thus vacate the trust and remand with directions to fix the amount of Riddell's statutory benefits.

## II. FACTS AND PROCEEDINGS

In December 1993 Lillie Rahm–Riddell, who was in her early nineties, met Robert J. Riddell, who was in his mid-sixties. Riddell ingratiated himself to Lillie and became her handyman. He soon moved in with her and started to isolate her from her family and friends. Riddell married Lillie in Ketchikan in May 1995, while guardianship proceedings were pending to determine Lillie's competency to manage her personal and financial affairs. Those proceedings resulted in the appointment of the Public Guardian as Lillie's primary conservator; several months later, prompted by reports of domestic violence, the superior court entered an order restraining Riddell from contacting Lillie. Lillie moved to an assisted-living home in Washington state. Riddell spirited her away from the home and took her to Oregon, where they lived together until Lillie died in September 1997. The entire time that Lillie knew Riddell, she suffered from Alzheimer's disease and/or senile dementia.[1]

Lillie's brother, Irvin H. Edwards, accepted the superior court's appointment as personal representative of her estate. Ensuing litigation between the estate and Riddell generated three appeals. In the first appeal, we affirmed the superior court's order invalidating for lack of testamentary capacity a will that Lillie executed shortly before her death leaving her entire estate to Riddell.[2] In the second, we affirmed the superior court's order denying creditor claims that Riddell filed against the estate seeking compensation for alleged premarital and marital services to Lillie.[3]

The third appeal, which we now consider, arises from two related superior court orders: (1) an order declaring Lillie's marriage to Riddell valid and finding Riddell eligible as Lillie's surviving spouse to claim his statutory rights to allowances and share; and (2)

---

1. For additional background concerning Riddell and Lillie and the administration of this estate, refer to *Riddell v. Edwards*, 32 P.3d 4 (Alaska 2001) ("*Riddell I*") and *Riddell v. Edwards*, Mem. Op. & J. No. 1050 (Alaska, October 10, 2001) ("*Riddell II*").

2. *Riddell I*, 32 P.3d at 5, 10.

3. *Riddell II*, Mem. Op. & J. No. 1050 at 1.

a subsequent order, based on a finding of fraudulent conduct by Riddell toward Lillie, establishing a constructive trust in the estate's favor to receive Riddell's payments of allowances and share. Our decision requires us to describe these orders in considerable detail.

In the course of the probate proceedings, after Riddell petitioned for his statutory allowances and share, the superior court ordered briefing and conducted a hearing to determine the validity of the marriage. The estate sought to invalidate the marriage, arguing that it was voidable because Lillie had been incompetent and Riddell had fraudulently induced her to enter into the marriage. Following the hearing, the court issued a thoughtful and carefully reasoned decision that found clear and convincing evidence of Riddell's fraudulent conduct toward Lillie but nevertheless rejected the estate's challenge to the marriage and declared Riddell eligible to claim allowances and share.

The superior court began its decision by unequivocally recognizing the compelling evidence of Riddell's misconduct toward Lillie:

A review of the prior evidence and the new evidence leaves no question to any objective observer by clear and convincing evidence Mr. Riddell ingratiated himself to [Lillie] for the purposes of obtaining her assets. She was suffering from dementia, was alone and lonely and he did small things for her in a way that kept her from making decisions that she would have made when she was fully competent. He isolated her by changing her phone, bullying family and friends that were old and frail themselves in such a way that they were not able to be supportive of her.

Three separate court actions involving injunctions under the Domestic Violence law, a conservatorship and a guardianship were filed. Lawyers, a conservator, a temporary guardian and a guardian ad litem were appointed for [Lillie]. Mr. Riddell defeated them all. In his own words, he and [Lillie] sneaked to Juneau to get a marriage license and got married secretly in Ketchikan while conservator proceedings were pending.

Mr. Riddell physically intimidated friends, family, lawyers and caregivers. He spirited [Lillie] away from the nursing home in Washington and kept her from authorities despite attempts to locate her by lawyers, a private investigator and court orders that he disclose her whereabouts.

Mr. Riddell provided [Lillie] with the attention she craved and did small things for her that made her life better. He also abused her physically and cut her off from her friends and family so that she was utterly dependent upon him for all her needs.

But the court also recognized that this evidence did not necessarily render Lillie's marriage invalid. Noting that "[p]ersons suffering from dementia have fluctuating periods of more contact with reality and ability to cope," the court reviewed the evidence and found credible testimony indicating that Lillie was competent and understood the consequences of her actions at the time that she married Riddell. In the court's view, then, the evidence did not convincingly prove Lillie's incompetence when she entered into the marriage: "this court cannot say that at the time she applied for the marriage license or when she actually participated in the ceremony she did not understand that she was getting married."

The superior court then proceeded to consider the legal significance of this finding; in so doing, it drew an important distinction between marriages that are void and those that are merely voidable. The court noted that, in AS 25.24.020, the Alaska Legislature defined a narrow class of marriages as legally void. That statute provides:

A marriage which is prohibited by law on account of consanguinity between the persons, or a subsequent marriage contracted by a person during the life of a former husband or wife which marriage has not been annulled or dissolved is void.

In contrast, the court pointed out, AS 25.24.030 defines a broader class of marriages as voidable. Alaska Statute 25.24.030 provides:

A marriage may be declared void for any of the following causes existing at the time of the marriage:

(1) [under the age of legal consent];

(2) that either party was of unsound mind, unless that party, after coming to reason,

freely cohabited with the other as husband and wife;

(3) that the consent of either party was obtained by fraud, unless that party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband and wife;

(4) that the consent of either party was obtained by force, unless that party afterwards freely cohabited with the other as husband and wife;

(5) [failure to consummate].

The court further noted an early Oregon Supreme Court decision [4] construing statutory provisions similar to Alaska's to allow a marriage to be declared void on the ground of incapacity only when the party lacked capacity to understand the transaction and its quality and consequences. And the court also emphasized the legislature's intent to allow a challenge under this broader class of voidable marriages to be brought only by a party to the marriage; AS 25.05.031 unequivocally states the limitation:

> If either party to a marriage is incapable of consenting to it at the time of the marriage for want of marriageable age of consent or sufficient understanding, or if the consent of either party is obtained by force or fraud, or if either party fails to consummate the marriage, the marriage is voidable but only at the suit of the party under the disability or upon whom the force or fraud is imposed.

Given this statute, the court concluded that "[t]he personal representative of the estate may not bring a suit regarding the voidability of a marriage on ... behalf of a party under a disability after that party has died."

After surveying cases from other jurisdictions, the superior court further determined that Alaska's statutory scheme reflects the majority view, which the court characterized as precluding the personal representative of a deceased spouse from challenging the validity of the spouse's marriage in the absence of either an express statutory provision allowing post-mortem challenges or gross fraud coupled with mental disability.

Applying this analysis, then, the superior court examined the circumstances of the case at issue here to determine whether they established that Lillie's marriage was either void under AS 25.24.020 (as opposed to being merely voidable under AS 25.24.030) or involved the kind of gross fraud that led other jurisdictions to entertain post-mortem claims of invalidity by personal representatives. Because the court found the evidence as a whole to show that Lillie "understood the nature of her decision to marry Mr. Riddell," it declined to find the marriage void. The court went on to consider whether the case fell within the gross-fraud exception, which allows post-mortem challenges to a valid marriage upon proof of gross fraud arising from "a combination of incompetence and egregious behavior." Though it noted that "Mr. Riddell did isolate [Lillie] from her family and friends and he may have married her to obtain her property," the court found that "his conduct did not rise to the level of gross fraud."

Accordingly, the superior court's order declared the marriage valid under AS 25.24.020's voidness criteria and precluded the estate from challenging it under AS 25.24.030's provisions describing voidable marriages; on this basis the court ruled that Riddell was Lillie's surviving spouse and was therefore eligible to claim a surviving spouse's statutory allowances and share.

But the court's first order merely declared that Riddell was eligible to claim his statutory allowances and share; it did not actually direct the estate to pay. Moreover, in declining to allow the estate to pursue its challenge to Lillie's marriage, the court cited and discussed *Patey v. Peaslee*, a case involving analogous facts in which the New Hampshire Supreme Court construed New Hampshire laws to preclude a personal representative's action to invalidate the deceased spouse's marriage but nonetheless allowed the personal representative to pursue an equitable claim seeking to establish a constructive trust in favor of the estate.[5] This discussion

---

4. The superior court cited *Coleman v. Coleman*, 85 Or. 99, 166 P. 47 (1917).

5. *Patey v. Peaslee*, 99 N.H. 335, 111 A.2d 194, 198 (1955) (barring heirs from annulling marriage); *Patey v. Peaslee*, 101 N.H. 26, 131 A.2d 433, 435 (1957) (recognizing constructive trust as appropriate equitable remedy).

of *Patey* in the superior court's first order planted the seeds for the order that followed.

After receiving the order declaring him eligible to receive the statutory marital allowances and share, Riddell filed a motion seeking to enforce that order. In response, the estate cross-moved to establish a constructive trust requiring Riddell's allowances and share to be paid to the estate. The superior court's second order granted the estate's cross-motion for a constructive trust. The court preliminarily observed that "[a] constructive trust can be imposed in any case where a wrongful acquisition or detention of property to which another is entitled has occurred." Relying on its earlier order, the court reiterated its view that the record "leaves no question to any objective observer by clear and convincing evidence [that] Mr. Riddell ingratiated himself to [Lillie] for the purposes of obtaining her assets." And quoting *Patey v. Peaslee,* the court emphasized that its earlier order validating the marriage did not bar the estate's request for a constructive trust:

> Although this court was unable to find the type of gross fraud needed to invalidate the marriage in its previous findings, that does not mean the "exercise of equity jurisdiction to impose a constructive trust with respect to property acquired from the decedent" is not warranted here.[6]

After reviewing *Patey*'s list of relevant criteria to consider in establishing a constructive trust, the court ruled that, "[b]ecause of the previous factual findings by the court, this court finds clear and convincing evidence that a constructive trust is warranted."

Riddell appeals.

## III. DISCUSSION

### A. Standard of Review

■ Although we generally defer to the trial court's broad discretion in balancing equitable principles, we use our independent judgment for legal issues and review de novo the court's interpretation of the law and its application of law to facts.[7]

### B. The Elements of a Constructive Trust

■ A constructive trust is an equitable remedy that becomes available upon clear and convincing proof that the party against whom the trust will be imposed has been unjustly enriched by receiving assets that rightly belong to the party in whose favor the trust will be created.[8] We have said that a "constructive trust may be defined as a [device] used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs"; the trust arises to prevent the property holder from retaining property obtained "by reason of unjust, unconscionable, or unlawful means." [9] At a minimum, then, a constructive trust presupposes a transfer or holding of property in which the equitable beneficiary has a legal interest and unconscionable conduct by the property's holder in connection with its acquisition.

■ In its order imposing a constructive trust, the superior court did not expressly consider whether Riddell's claim of allowances and share would result in a transfer of property belonging to the estate, or in which the estate had some legal interest. But the court's earlier order, which recognized the validity of Riddell's marriage to Lillie, weighs heavily against the presence of this necessary element.

■ The estate has not challenged the superior court's decision upholding the validity of the marriage despite Lillie's vulnerable mental condition and Riddell's fraudulent conduct. Because that decision turned on the trial court's evaluation of competing evidence and has not been disputed, we have no

---

**6.** Internal footnote omitted citing *Patey,* 111 A.2d at 198.

**7.** *See, e.g., Leis v. Hustad,* 22 P.3d 885, 887 (Alaska 2001); *Hamilton v. Blackman,* 915 P.2d 1210, 1213 (Alaska 1996); *Leisnoi, Inc. v. Stratman,* 835 P.2d 1202, 1207 (Alaska 1992); *Wood v. Collins,* 812 P.2d 951, 955 n. 4 (Alaska 1991).

**8.** *See, e.g., McKnight v. Rice, Hoppner, Brown & Brunner,* 678 P.2d 1330, 1334–35 (Alaska 1984) (elements); *City of Lakewood v. Pierce County,* 144 Wash.2d 118, 30 P.3d 446, 450 (2001) (elements and standard of proof).

**9.** *McKnight,* 678 P.2d at 1335 (quoting GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 471, at 3 (rev.2d ed.1978)).

occasion to question it here. A prospective heir generally has no recognized right to a living relative's property: we have held that a decedent's property interests devolve to heirs and devisees only upon death;[10] and even then the heirs and devisees receive their interests only "subject to" the surviving spouse's statutory allowances and share,[11] which similarly vest upon death and depend solely on the surviving spouse's marital status—that is, on the existence of a valid marriage.[12]

By ruling that Riddell's marriage was valid and could not be set aside by the estate, the superior court effectively determined that Riddell's statutory entitlements to allowances and share had vested upon Lillie's death—before Lillie's estate ever received any cognizable interest or right to the portion of Lillie's estate that vested in Riddell. As a matter of law, then, the court's order validating the marriage ruled out the existence of an element necessary to support the court's subsequent decision to impose a constructive trust: a finding that the portion of Lillie's estate passing to Riddell "justly belong[ed]" to the estate.[13]

Moreover, even if we assume that the estate had a cognizable interest in these funds,

the superior court's declaration of a valid marriage would still rule out the second prerequisite for a constructive trust: a finding that Riddell obtained his statutory rights "by reason of unjust, unconscionable, or unlawful means."[14] As already explained, Riddell acquired his statutory right to allotments and share solely because he married Lillie and survived her with their marriage intact. For reasons we address below in Part III.C. of this opinion, we conclude that the superior court's order declaring the marriage to be valid *despite* Riddell's unconscionable premarital conduct precludes a finding that he acquired his statutory rights because of that conduct.

■ To be sure, as the superior court noted in its order validating the marriage, Riddell's fraudulent conduct persisted after he married Lillie; and as this court made clear in *Riddell I*, Riddell's continuing misconduct ultimately caused Lillie to execute a new will shortly before her death, naming Riddell as her sole beneficiary.[15] But the superior court's earlier decision invalidating that will for lack of testamentary capacity—the decision we affirmed in *Riddell I*[16]—directly addressed the harm caused by that ongoing misconduct. And neither the new

**10.** *See Sheehan v. Estate of Gamberg,* 677 P.2d 254, 256–57 (Alaska 1984).

**11.** In this regard, AS 13.16.005 expressly provides:

The power of a person to leave property by will, and the rights of creditors, devisees, and heirs to the property are subject to the restrictions and limitations contained in AS 13.06—AS 13.36 to facilitate the prompt settlement of estates. Upon the death of a person, that person's real and personal property devolves to the persons to whom it is devised by the last will or to those indicated as substitutes for them in cases involving lapse, renunciation, or other circumstances affecting the devolution of testate estates, or in the absence of testamentary disposition, to the heirs, or to those indicated as substitutes for them in cases involving renunciation or other circumstances affecting devolution of intestate estates, *subject to homestead allowance,* exempt property and *family allowance,* to rights of creditors, *elective share of the surviving spouse,* and to administration. (Emphasis added.)

**12.** Alaska's statutory rights to allowances and share are set forth in AS 13.12.402, AS 13.12.404, and AS 13.12.202. AS 13.12.402 states: "A decedent's surviving spouse is entitled

to a homestead allowance of $27,000.... The homestead allowance is exempt from and has priority over all claims against the estate. Homestead allowance is in addition to a share passing to the surviving spouse ... by way of elective share."

AS 13.12.404(a) provides:
In addition to the right to homestead allowance ..., the decedent's surviving spouse and minor children ... are entitled to a reasonable allowance in money out of the estate for their maintenance during the period of administration.... The family allowance is exempt from and has priority over all claims except the homestead allowance.

AS 13.12.202(a) provides: "The surviving spouse of a decedent who dies domiciled in this state has a right of election ... to take an elective share amount equal to one-third of the augmented estate."

**13.** *McKnight,* 678 P.2d at 1335 (quoting BOGERT, *supra* note 9, § 471, at 3).

**14.** *Id.* (quoting BOGERT, *supra* note 9, § 471, at 3).

**15.** *Riddell I,* 32 P.3d 4, 6 (Alaska 2001).

**16.** *Id.* at 9–10.

will nor the unconscionable postmarital conduct that led to its execution had any effect on Riddell's right to the statutory benefits, since his right to those benefits depended solely on the validity of the marriage at its inception and on his survival of Lillie while still her spouse. Moreover, the estate did not assert, nor did the superior court find, that Riddell's misconduct during the marriage brought about or hastened Lillie's death, thereby causing his statutory benefits to vest sooner, or that it had any other causal connection to the timing or ultimate vesting of his right to the benefits.

The absence of a causal link between Riddell's unconscionable postmarital conduct and his right to receive the statutory benefits of marriage thus readily distinguishes his case from cases involving constructive trusts imposed against murderers—a category that the dissent mistakenly describes as being similar to the one before us.[17] For as the dissent itself acknowledges, the constructive trust principle applies in those cases because "the title to property *is acquired by* murder as it is where the title *is acquired by* fraud, duress, or undue influence."[18] Thus, in the present case, the causal link that justifies imposing a constructive trust in cases of spousal murder[19]—and that certainly would have justified a constructive trust had it been found to exist here—is missing.

## C. General Principles Governing Equitable Relief

A consideration of generally recognized principles governing equitable relief confirms the conclusion that a constructive trust was improper under these circumstances. Two equitable principles are relevant here.

First, a court acting in equity ordinarily " 'cannot [intrude] in matters that are plain and fully covered by [a] statute.' "[20] Here, the Alaska Legislature has explicitly set out the property interests that vest upon death in a surviving spouse: homestead allowance, family allowance, and elective share; the legislature has specified the circumstance that makes them vest: the existence of a "surviving spouse"—that is, a spouse who remained legally married at the time of death; and the legislature has attached no other prerequisite to the surviving spouse's statutory right.[21] Similarly, by specifying the requirements for a valid marriage and limiting the ways in which a marriage may be invalidated, the legislature has fully covered the manner in which courts may determine whether a person qualifies as a "surviving spouse" for purposes of acquiring a vested statutory right to allowances and share.[22] As the superior court recognized in upholding the validity of Riddell's marriage, the legislature deliberately limited the right to challenge the validity of a marriage that is voidable on grounds of disability, force, or fraud, extending that right exclusively to "the party under the disability or upon whom the force or fraud is imposed."[23] Given the superior court's findings that Riddell's marriage was neither void ab initio because of Lillie's incapacity nor voidable after her death for gross fraud arising from "a combination of [Lillie's] incompetence and [Riddell's] egregious behavior," it follows that the statutory provisions governing a surviving

---

**17.** Dissent at 856, 859–860.

**18.** Dissent at 859 (quoting 5 Austin Wakeman Scott & William Franklin Fratcher, The Law of Trusts § 492, at 440 (4th ed.1989)) (emphasis in dissent altered).

**19.** *See* 5 Scott & Fratcher, supra note 18, § 492, at 440 ("[A] constructive trust is imposed upon one who *acquires* property *through* his own wrong.") (emphasis added).

**20.** *Pacific Scene, Inc. v. Penasquitos, Inc.*, 46 Cal.3d 407, 250 Cal.Rptr. 651, 758 P.2d 1182, 1186 (1988) (quoting *Marsh v. Edelstein*, 9 Cal. App.3d 132, 88 Cal.Rptr. 26, 31 (1970)); *accord I.N.S. v. Pangilinan*, 486 U.S. 875, 883, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988) ("[I]t is well estab-

lished that '[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.' ") (quoting *Hedges v. Dixon County*, 150 U.S. 182, 192, 14 S.Ct. 71, 37 L.Ed. 1044 (1893)).

**21.** *See supra* note 12. As already indicated, these property interests vest upon death; the property interests of other heirs and devisees are necessarily subordinate because they devolve "subject to" the surviving spouse's statutory interest.

**22.** *See* AS 25.24.010 (only spouse may maintain action to have marriage declared void); AS 25.24.020 (definition of void marriages); AS 25.24.030 (definition of voidable marriages); AS 25.05.031 (marriage is voidable only by spouse).

**23.** AS 25.05.031.

spouse's automatic entitlements to allotments and share "fully covered" Riddell's situation.[24]

■ A second, closely related equitable principle that controls these circumstances is that a court must not apply equity to do indirectly " 'what the law or its clearly defined policy forbids to be done directly.' " [25] Here, the superior court recognized that Lillie, despite her incapacity, understood the consequences of her actions when she accepted Riddell in marriage; the court further held that, even when combined with Lillie's incapacity, Riddell's fraudulent actions were not sufficiently gross to allow a post-mortem claim that the marriage was voidable. In consequence, as we have seen, the law required the court to declare Riddell eligible to receive the statutory benefits of a surviving spouse; indeed, the court's first order recognized that requirement. Yet by subsequently invoking the same factual findings of fraud and incompetence to trigger the equitable mechanism of a constructive trust, the court did indirectly what the law specifically forbade it to do directly: in nullifying Riddell's already vested right to allotments and share and awarding the money to the estate, the court effectively allowed the estate to avoid on equitable grounds the direct legal consequences of the court's earlier legal conclusion that Lillie had made "a competent decision about her marriage" and had "understood the nature of her decision to marry Mr. Riddell."

### D. Other Considerations

■ We recognize that the superior court rested its decision in part on the New Hampshire Supreme Court's decision in *Patey v. Peaslee* and that *Patey* approved pursuit of an action for a constructive trust under closely similar circumstances.[26] Yet the majority's decision in *Patey* cites no useful authority for its unconventional application of the constructive trust remedy; as far as we can determine, the decision has never been followed under similar circumstances since it was issued in 1957. And in our view, the dissent in *Patey* persuasively argues essentially the same point we make here: that the status and benefits of marriage are within the province of the legislature and that a court must avoid using its equitable powers to invalidate rights that flow from surviving a legally valid marriage when the legislature so clearly directs those rights.[27] We thus decline to follow *Patey*.

■ We further recognize that Alaska's Uniform Probate Code generally gives trial courts broad latitude to supplement statutory provisions with equitable principles: AS 13.06.015 specifies that "[u]nless displaced by the particular provisions of [the code], the principles of law and equity supplement those provisions." [28] Yet nothing in this opinion discourages the use of these broad supplemental powers; we merely hold that the factual circumstances the trial court found here did not leave room for equitable supplementation: the "particular provisions" of statutory law governing void and voidable marriages and accrual of allowances and share fully covered this situation and affirmatively "displaced" the equitable remedy of constructive trust. We apply no broad limitations on the use of equitable measures in probate cases; instead, we merely hold that

24. *Pacific Scene, Inc.*, 250 Cal.Rptr. 651, 758 P.2d at 1186.

25. *Id.* (quoting *Marsh*, 88 Cal.Rptr. at 31).

26. 101 N.H. 26, 131 A.2d 433, 435 (1957).

27. *See id.* at 437–38 (Blandin, J., dissenting); *see also* Ch. 58, pmbl., SLA 1963 (stating that the legislature's purpose was "[t]o provide a comprehensive marriage code"); *Batey v. Batey*, 933 P.2d 551, 554 (Alaska 1997) (declining to use common law definition that countered express legislative intent).

28. Citing AS 13.06.015, the dissent questions whether the statutory provisions governing void and voidable marriages can displace the court's equitable power in a probate case: because those definitions are located outside the probate code and therefore do not qualify as "particular provisions" of the probate code, the dissent reasons, AS 13.06.015 does not allow them to displace the supplemental powers granted in that provision. Dissent at 23–25. But by providing that the right to marital allowances and share turn on the existence of a "surviving spouse," *see supra* note 12, the probate code necessarily incorporates the marriage code's definitional provisions that give the term meaning—if not as "particular provisions" of the probate code that can displace the court's supplemental equity powers, then at least as "principles of law" directly applicable under AS 13.06.015's express terms.

the selected measure of a constructive trust did not apply here.[29]

The facts in this case obviously make it tempting to deny Riddell any benefit from his fraudulent conduct; this makes the recourse of a constructive trust seem alluringly sensible. But allowing offensive factual circumstances to dictate an unauthorized legal remedy can have a pernicious effect in the long-run by upsetting the complex and delicate balance that our system of government strives to maintain between the legislature's lawmaking powers and the courts' traditional equitable powers. The superior court here carefully examined all relevant evidence and declared Riddell to be the surviving spouse of a valid marriage. The legislature has spelled out the rights that Riddell acquires by virtue of his status. To dilute these plain and complete legislative directives with a legally inappropriate equitable remedy would impermissibly expand the court's equitable powers at the expense of established positive law.

We must therefore vacate the order imposing a constructive trust and remand this case to allow the superior court to determine the amount of Riddell's allowances and share.[30] In remanding the case, however, we note that the applicable statutes specify the amount of both the homestead allowance and elective share[31] but leave the amount of the family allowance in the court's discretion.[32] To this extent, the statutes allow the superior court to factor equitable considerations into its decision on remand.

## IV. CONCLUSION

We REVERSE the order imposing a constructive trust and REMAND for further proceedings to establish the amount of the statutory allowances and share.

CARPENETI, Justice, dissenting.

Because the finding that a marriage is valid is not inconsistent with the imposition of a constructive trust, I dissent from today's Opinion. A comparison of the legal requirements of a valid marriage with the legal requirements of a constructive trust shows why there is no inconsistency in the superior court's decision and why it should be affirmed. Moreover, AS 13.06.015 authorizes the superior court's imposition of a constructive trust; the Opinion errs in concluding that the equitable remedy was "displaced" by the statutes governing marriages and accrual of allowance and share. Finally, other states have imposed constructive trusts in situations similar to the one before the court, and a leading treatise specifically approves the procedure.

*Legal requirements for valid marriage and constructive trust*

There are only limited circumstances in which a marriage may be declared void. The legislature has provided that a marriage may be declared void only if, at the time of the marriage, a party was under the age of consent, a party was of unsound mind, force or fraud was used in obtaining consent, or there was failure to consummate the marriage.[1] Moreover, in order for the marriage to be invalidated, the disability or undue influence must exist at the moment that a person enters into the marriage.[2] These requirements narrowly confine the situations in which one's consent to marry is not considered valid.

---

**29.** The dissent attempts to portray this conclusion as "holding that a finding of a valid marriage is inconsistent with the equitable doctrine of constructive trust." Dissent at 24. But our decision is considerably narrower, holding that the imposition of a constructive trust on a surviving spouse's statutory benefits is impermissible only when, as here, the surviving spouse's unconscionable conduct neither caused an invalid marriage nor otherwise caused or helped to cause the statutory benefits arising from that marriage to vest.

**30.** Our decision renders Riddell's remaining arguments moot, making it unnecessary to consider them.

**31.** AS 13.12.402 ($27,000); AS 13.12.202(a)-(b) (one-third of the augmented estate; supplemental share under certain circumstances).

**32.** AS 13.12.404(a) ("a reasonable allowance").

**1.** AS 25.24.030.

**2.** *Id.* After quoting the superior court to the effect that "[p]ersons suffering from dementia have fluctuating periods of more contact with reality," the Opinion notes that "Lillie was competent and understood the consequences of her actions *at the time that she married* Riddell.... [T]he evidence did not convincingly prove Lillie's incompetence *when she entered into the marriage.*" Opinion at 850 (emphasis added).

In contrast to the well-defined, limited circumstances in which a marriage may be declared void, a constructive trust may be imposed in a broad range of circumstances. In imposing a constructive trust, there is no requirement that the unjust or unconscionable conduct occur at the moment that title transfers or that a statutory right attaches, only that the defendant holds the property in circumstances that are unjust. As we said in *McKnight v. Rice, Hoppner, Brown & Brunner*, quoting from a leading treatise, a constructive trust is "a [device] used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." [3]

The Opinion quotes *McKnight* to this effect,[4] but it mistakenly assigns dispositive significance to the superior court's finding of a valid marriage, holding that this finding "ruled out the existence of an element necessary to ... a constructive trust: a finding that the portion of Lillie's estate passing to Riddell 'justly belong[ed]' to the estate." [5] The finding of a valid marriage, and the subsequent passing of a portion of Lillie's estate to Riddell through allowances and shares, merely sets the stage for the determination of whether there are grounds for application of the constructive trust doctrine: "It is then [after the property passes under the will or by intestacy] that the equitable principle as to unjust enrichment becomes applicable." [6]

3. *McKnight v. Rice, Hoppner, Brown & Brunner*, 678 P.2d 1330, 1335 (Alaska 1984) (quoting G. Bogert, Trusts and Trustees § 471, at 3 (rev.2d ed.1978)).

4. Opinion at 853.

5. *Id.*

6. Austin Wakeman Scott & William Franklin Fratcher, The Law of Trusts § 492, at 440 (4th ed.1989).

7. *Id.* (emphasis added) (quoting Bogert, *supra* note 3, § 471 at 3).

8. The Opinion strains to find a requirement that the equitable beneficiary have a "legal interest" in the property, Opinion at 852, and then concludes that because title vested in Riddell upon Lillie's death, the superior court's "order validating the marriage ruled out the existence of an element necessary to support the court's subsequent decision to impose a constructive trust: a finding that the portion of Lillie's estate passing

The Opinion's discussion of "the second prerequisite" for a constructive trust is even farther off the mark. Although it quotes *McKnight* to the effect that a finding that one obtained property "by reason of *unjust, unconscionable, or* unlawful means" [7] will justify imposition of a constructive trust, it reads "unjust" and "unconscionable" completely out of the quotation and focuses only on "unlawful." That is error; our use of "or" in *McKnight* makes clear that Riddell's use of either "unjust" means or "unconscionable" means to acquire an interest gives the court a sufficient basis to impose a constructive trust. The superior court in the present case did exactly that, using a constructive trust as an equitable remedy to take Riddell's unjustly acquired interest in the estate and vest it in the rightful [8] beneficiaries of the estate.

Because Riddell's marriage was not unlawful—in the Opinion's phrase, because it was "valid despite Riddell's *unconscionable* premarital conduct" [9]—the Opinion ignores that his conduct in procuring the marriage was undoubtedly "unjust" and, indeed, "unconscionable."

Thus it is clear that, despite the Opinion's claim, there is no "absence of a causal link between Riddell's unconscionable ... conduct and his right to receive the statutory benefits of marriage." [10] Quite to the contrary, the conduct that the Opinion twice describes as "unconscionable" [11]—what the

to Riddell 'justly belong[ed]' to the estate." Opinion at 853. But the constructive trust doctrine, a creature of equity, contains no requirement of a "legal interest" as the Opinion narrowly defines it. Rather, the constructive trust doctrine looks to whether there is an equitable interest in the property: "A constructive trust is imposed upon a person in order to prevent his unjust enrichment. To prevent such unjust enrichment an equitable duty to convey the property to another is imposed upon him." Restatement of Restitution § 160 cmt. c (1937).

9. Opinion at 853 (emphasis on "unconscionable" added; emphasis on "despite" deleted).

10. *Id.* at 854.

11. *Id.* at 853–854. While conceding that Riddell's conduct was unconscionable both before the marriage ("Riddell's unconscionable premarital conduct," Opinion at 854) and after the mar-

superior court described, with the apparent agreement of the Opinion,[12] as "fraudulent conduct toward Lillie," "bullying ... and physical[ ] intimidat[ion of] friends [and] family," finding that Riddell "abused [Lillie] physically"—while it did not invalidate the marriage, is precisely the type of conduct that supports the superior court's finding that Riddell's "legal title to property has been obtained through actual fraud, concealment, by taking advantage, or, under circumstances rendering it unconsci[onable] for" him to retain the interest. Indeed, the Opinion notes that the superior court found that Riddell had induced Lillie to marry him " 'for the purpose[ ] of obtaining her assets' and that his wife had suffered from dementia for the majority of their relationship." [13] As the superior court carefully explained, it upheld the validity of the marriage despite those findings and although "even immediately afterward, [Lillie] didn't remember that she had married Mr. Riddell," because the superior court "cannot say that at the time she applied for the marriage license or when she actually participated in the ceremony she did not understand that she was getting married." In other words, the superior court made no finding that Riddell's unconscionable conduct did not lead to the marriage. To the contrary, it effectively found that Riddell had fraudulently induced the marriage. The superior court found only that, at the moment she applied for the license and at the moment she was married, it could not say that she was unaware of what she was doing.

### Alaska Statute 13.06.015

The legislature has made it clear that, in deciding claims arising under the probate code, a court may exercise its equitable powers unless explicitly forbidden to do so: Alaska Statute 13.06.015 provides that "[u]nless displaced by the particular provisions of AS 13.06 AS 13.36, the principles of law and equity supplement those provisions." No part of any of the "particular provisions" of the probate code dealing with allowances and share displace the principle of equity; they merely establish Alaska's positive statutory law on those subjects. Without citation to authority, the Opinion mistakenly looks outside of the probate code, to provisions of the statutes dealing with divorce and dissolution,[14] to reach its conclusion that AS 13.06.015 does not apply: "the 'particular provisions' of statutory law governing void and voidable marriages and accrual of allowances and share fully covered this situation and affirmatively 'displaced' the equitable remedy of constructive trust." [15] But the test under AS 13.06.015 is not whether Alaska law "fully covered" the situation. It is whether any particular provisions of the *probate code* should be read as displacing the superior court's authority to invoke the equitable doctrine of constructive trust. Given that AS 13.06.015 so unambiguously states that principles of equity apply "[u]nless displaced by particular provisions of AS 13.06–AS 13.36," today's holding that a finding of a valid marriage is inconsistent with the equitable doctrine of constructive trust adopts an unduly restrictive view of our law.

In support of its conclusion, the Opinion cites *Pacific Scene, Inc. v. Penasquitos,*

---

riage ("Riddell's unconscionable postmarital conduct," Opinion at 854), the Opinion seeks to avoid the unescapable conclusion that there is therefore a clear causal link between Riddell's unconscionable conduct and his receipt of the statutory benefits of marriage. The Opinion seeks to distinguish this case from cases imposing constructive trusts against murderers by pointing to the "absence of a causal link between Riddell's unconscionable *postmarital* conduct and his right to receive the statutory benefits of marriage." (Opinion at 854, emphasis added.) But in conceding that Riddell's conduct was unconscionable both *before* and *after* the marriage, the Opinion concedes that the causal link it denies actually does exist.

**12.** The Opinion refers to the "compelling evidence" of Riddell's misconduct. Opinion at 850.

**13.** Opinion at 849.

**14.** The Opinion refers to the provisions of law governing void and voidable marriages, which are found in the statutes dealing with divorce and dissolution, AS 25.24.020–.030. Opinion at 854. Besides being inapplicable to AS 13.06.015, which refers specifically to AS 13.06–AS 13.36, the statutes dealing with divorce and dissolution make no mention of specifically displacing any principles of equity, much less the doctrine of constructive trust.

**15.** Opinion at 855.

*Inc.*[16] for the proposition that a court acting in equity generally "cannot [intrude] in matters that are plain and fully covered by [a] statute."[17] While the proposition is unexceptionable,[18] *Pacific Scene* lends no support to the Opinion's conclusion, for that case dealt with a statutory scheme that is far different from the Alaska probate code sections that are before us in this case. In *Pacific Scene*, the California legislature had enacted a "comprehensive statutory revision" that "comprise[d] a broad and detailed scheme regulating virtually every aspect of corporate dissolution."[19] The court described such legislation as covering the situation where "course of conduct, parties, things affected, *limitations and exceptions are minutely described*, indicat[ing] a legislative intent that the statute should *totally supersede and replace* the common law dealing with the subject matter."[20] That is a completely different situation than the one before us now.

The statutes before us now are garden-variety probate laws that establish allowances and shares, and in no way suggest that they are intended to preclude the court's use of general principles of equity. They do not specifically "displace" the equitable power of the superior court to give an unjustly-inherited share back to the estate through constructive trust.

Nor does the superior court's decision "do indirectly what the law or its clearly defined policy forbids to be done directly," as the Opinion claims.[21] The legislature did not forbid the superior court from imposing a constructive trust after allowing Riddell to inherit from the estate. The legislature did require that the superior court recognize the validity of the marriage, and the court did so. The superior court did not invalidate the marriage or ignore the statutory mandate to give Riddell his share of the estate. Riddell was allowed to inherit his statutorily-prescribed share. After fulfilling the statutory directive, the superior court used the equitable powers specifically envisioned by AS 13.06.015 to carry out the legislature's statutory scheme, creating a constructive trust to take back Riddell's unjustly-acquired gains.

The superior court complied with all applicable statutes, and did not do indirectly what the law forbade it to do directly. The Opinion's argument—that once the law of voidable and void marriages is applied, Riddell's allowances and share are established and a constructive trust may not be imposed—is wrong, as is shown by this discussion from SCOTT ON TRUSTS:

> Where the Statute of Wills and the statute of distributions make no provision as to the effect of murder of the decedent by the legatee or heir, the property passes under the will or by intestacy to him. It is *then* that the equitable principle as to unjust enrichment becomes applicable. *That principle is as applicable where the title to property is acquired* by murder as it is where the title is acquired *by fraud, duress, or undue influence.* By imposing a constructive trust upon the murderer, the court is not making an exception to the provisions of the statutes but is merely compelling the murderer to surrender the profits of his crime and thus preventing unjust enrichment.[22]

Thus, "where the title is acquired by fraud, duress, or undue influence," a constructive trust is imposed on the property after it has already devolved to the spouse. The trust is then imposed on the property for the benefit of the estate. SCOTT ON TRUSTS makes clear that this is proper.

The Opinion's approach would allow one spouse, who murders the other, to retain his

---

16. 46 Cal.3d 407, 250 Cal.Rptr. 651, 758 P.2d 1182 (1988).

17. Opinion at 854 [bracketed material is as inserted in the Opinion].

18. With the possible exception that the California court said "positive" statute, 250 Cal.Rptr. 651, 758 P.2d at 1186, not "[a]" statute, Opinion at 854, suggesting that a positive—that is, a clear and strong—declaration of law limiting the court's equitable powers is required before such powers may be limited.

19. 250 Cal.Rptr. 651, 758 P.2d at 1184.

20. *Id.* 250 Cal.Rptr. 651, 758 P.2d at 1183 (citation and internal quotations omitted) (emphasis added).

21. Opinion at 855 (citations and internal quotations omitted).

22. AUSTIN WAKEMAN SCOTT & WILLIAM FRANKLIN FRATCHER, THE LAW OF TRUSTS § 492, at 440 (4th ed.1989) (emphasis added).

or her share of the estate in the absence of positive legislation to the contrary.[23] Alaska lacked such legislation until 1996, when AS 13.12.803 [24] was enacted.[25] Under the majority's rigid interpretation of the inheritance and marriage statutes, Alaska courts before that time would have been forced to uphold the murderer's elective share, as the " 'particular provisions' of statutory law governing void and voidable marriages and accrual of allowances and share" [26] cover that situation to the same extent they cover this case. Yet courts in several states have found that equity demands imposing a constructive trust on the murderer's share, even in the absence of a statute like AS 13.12.803.[27] Likewise, the Alaska legislature meant for the inheritance and marriage statutes to be read in conjunction with AS 13.06.015, allowing the possibility for courts to impose a constructive trust to prevent injustice in limited circumstances. As SCOTT ON TRUSTS definitively states, the equitable principle of unjust enrichment, which allows the imposition of a constructive trust, "is as applicable where the title to property is acquired by murder as it is where the title is acquired by fraud, duress, or undue influence." [28]

Judge Weeks was well within the law in imposing a constructive trust to reclaim the property that he found—and that this court today affirms on "compelling evidence" [29]—was gained by Riddell's "fraudulent conduct toward Lillie," [30] "bullying family and friends," [31] "physical[ ] intimidat[ion of] friends, family, lawyers and caregivers," [32] and because he "abused [Lillie] physically." [33]

This is a case in which equity fairly demands that a constructive trust be imposed, and Judge Weeks was correct in imposing one.

For all of the above reasons, I would affirm the decision of the superior court imposing a constructive trust on Riddell's statutory homestead allowance, family allowance, and elective share. I therefore respectfully dissent.

23. The Opinion attempts to distinguish the present case from the case of a murdering spouse by pointing to the "absence of a causal link between Riddell's unconscionable postmarital conduct and his right to receive the statutory benefits of marriage." Opinion at 854. As shown above, there is a causal link in this case between Riddell's unconscionable conduct—which occurred both before and after the marriage—and his receipt of benefits: Riddell fraudulently induced Lillie to marry him in order to obtain her assets.

24. AS 13.12.803(a) provides, in relevant part:
An individual who feloniously kills the decedent forfeits all benefits ... with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, exempt property, and a family allowance.

25. Ch. 75, § 3, SLA 1996.

26. Opinion at 855–856.

27. See, e.g., In re Estate of Danforth, 705 S.W.2d 609, 611–12 (Mo.App.1986) (holding that wife not allowed to profit by inheriting from husband's estate when she committed fraud in procuring marriage and conspiracy in murdering husband); Garwols v. Bankers' Trust Co., 251 Mich. 420, 232 N.W. 239, 242 (1930) (using common law to supplement statutory scheme to prevent son from inheriting from estate of his mother whom he murdered).

28. SCOTT & FRATCHER, supra note 6, § 492, at 440.

29. Opinion at 850.

30. Id.

31. Id.

32. Id.